SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. R.K.** (A-39-13) (072712)

**Argued October 7, 2014 -- Decided February 3, 2015**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court must determine whether defendant was afforded a fair trial, in light of numerous errors that occurred during the trial.

Defendant and his girlfriend, K.G., had two children, K.K. and R.K. Also living with them was K.G.'s daughter, C.G., then age nine. Although defendant was not C.G.'s biological father, he had been in her life since she was fifteen months old and acted as C.G.'s stepfather and disciplinarian. C.G. referred to defendant as "daddy." On March 30, 2009, K.G. left K.K. and C.G. in her car while she ran some errands. While the children were waiting, C.G. told K.K. that defendant sometimes had her come to the couch and "rub his pee pee." When their mother K.G. returned, K.K. told her what C.G. had said.

K.G. immediately drove home where she sat down with her daughters. C.G. told her mother that defendant had made her touch his private area "until yellow-white stuff came out" and moved her hands in a masturbatory motion. K.G. packed their belongings and called her father to pick them up. Later, at K.G.'s parents' house, C.G. told her mother that defendant had engaged in this activity with her at least ten times. C.G. also told her that during a trip with defendant to a recycling center, defendant touched and licked her private parts. C.G. indicated that she had told defendant she did not want to engage in these activities, but defendant told C.G. that if she refused, "[she] wouldn't be living at the house anymore." K.G. then contacted the Little Egg Harbor Township Police Department.

On April 3, 2009, the U.S. Coast Guard apprehended defendant while he was at work on a clamming vessel at sea. Defendant denied engaging in sexual activity with C.G., stating that he had spanked C.G. in public the day before she made the allegations, and that he believed the allegations stemmed from that incident. On June 16, 2009, a grand jury charged defendant with second-degree sexual assault, second-degree endangering the welfare of a child, and fourth-degree child abuse. In a superseding indictment, defendant was also charged with first-degree aggravated sexual assault.

Before trial, the State sought permission to present testimony from K.G. and K.K. under the fresh-complaint doctrine. The testimony was intended to recount their conversations with C.G. regarding the alleged abuse. The trial court admitted the testimony as evidence of the allegation, but not as proof of the underlying claim. K.G. testified that C.G. told her defendant made her "touch his private area," and that defendant made her "touch him and go like this until yellow-white stuff came out of his private area." While testifying, K.G. demonstrated the masturbatory motion C.G. had made. K.G. also noted C.G.'s claim that defendant threatened to harm her, her family, and her cat if C.G. ever told anyone. K.K. also provided fresh-complaint testimony. She testified that C.G. alleged "that every night before a special occasion, [defendant] would come in and tell her to come out on the couch and rub his pee pee." K.K. testified on direct examination: "I was kind of, like I was sad for her and I believed her because it's really sad. She wouldn't be making up things if it was not bad." The trial judge did not instruct jurors that fresh-complaint testimony may not be considered as substantive evidence of the underlying allegation, and no such instruction was requested.

A defense witness, a friend of K.G., was offered for the purpose of providing testimony that K.G. had said she suspected defendant cheated on her, and that K.G. planned to leave him. The prosecutor objected on hearsay grounds. Defense counsel argued that this evidence went to bias; however, the trial judge sustained the objection, and the testimony was excluded.

The jury acquitted defendant of aggravated sexual assault, but failed to reach a verdict on the sexual assault charge. However, the jury found defendant guilty of endangering the welfare of a child and child abuse. Defendant moved for a new trial based on the inconsistency of the verdicts; however, the motion was denied. The trial court sentenced defendant to a nine-year prison term, with a 54-month period of parole ineligibility.

Defendant appealed. On May 17, 2013, in an unpublished, per curiam decision, the Appellate Division affirmed defendant's conviction and sentence. The appellate panel found that the trial court did not abuse its discretion by admitting the fresh-complaint testimony and further found that K.G.'s testimony was not excessive. The panel held that neither K.G.'s nor K.K.'s testimony was "so detailed as to violate the fresh-complaint doctrine." The panel further determined that the trial court's failure to provide a fresh-complaint limiting instruction did not constitute plain error. This Court granted defendant's petition for certification. 216 N.J. 365 (2013).

**HELD:** Admission of the fresh-complaint testimony, bolstering of the victim's credibility, and exclusion of bias testimony constituted reversible error. These errors denied defendant a fair trial.

1. The fresh-complaint doctrine allows the admission of evidence of a victim's complaint of sexual abuse, otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is fabricated. To qualify as fresh-complaint evidence, the victim's statement must have been made spontaneously and voluntarily, within a reasonable time after the alleged assault, to a person the victim would ordinarily turn to for support. These requirements are relaxed when they are applied to juvenile victims. The trial court is required to charge the jury that fresh-complaint testimony is not to be considered as substantive evidence of guilt, or as bolstering the credibility of the victim; it may only be considered for the limited purpose of confirming that a complaint was made. When a defendant fails to object to an erroneous or omitted limiting instruction, it is viewed under the plain-error rule, Rule 2:10-2. The error will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached. If the State's case is particularly strong, any fresh-complaint instruction errors may be deemed harmless. (pp. 11-15)

2. The State may not attack one witness's credibility through another witness's assessment of that credibility. At trial, a party may introduce evidence that an adverse witness is biased, and parties may demonstrate bias through extrinsic evidence. N.J.R.E. 607. Such extrinsic evidence may include statements or "utterances." N.J.R.E. 803(c)(3) permits the admission of out-of-court statements that go toward a declarant's state of mind. (pp. 15-17)

3. K.G.'s fresh-complaint testimony did more than convey the nature of C.G.'s complaint, was excessively graphic, and included threats made to the victim that were not elicited from the victim herself. New Jersey courts have been consistent in allowing fresh-complaint witnesses to provide enough basic information that the jury will have a sense of the complaint's context. However, they "have adhered strictly and uniformly to the principle of disallowing excessive details." State v. Bethune, 121 N.J. 137, 147 (1990). While the facts of ejaculation and masturbation may fall within the boundaries of C.G.'s testimony, K.G.'s description of the "yellow-white stuff" that "came out" was provocative and more descriptive than originally provided. Further, K.G. testified that defendant threatened C.G. Those threats were not elicited from C.G. at trial. The combination of K.G.'s description and the demonstration exceeded the proper boundaries allowed in fresh-complaint testimony. The testimony did more than rebut a charge of fabrication based on silence. The prejudicial omission of the limiting instruction, and the excessive fresh-complaint testimony denied defendant a fair trial. (pp. 17-19)

4. While C.G.'s credibility was clearly relevant, other witnesses are prohibited from giving their opinions about her credibility. In this case, the bolstering of witness testimony was prejudicial to defendant and constituted reversible error. The Court further concludes that testimony about the adverse witness's bias was admissible and that excluding the testimony was reversible error. In light of the Court's resolution of the fresh-complaint, bolstering and bias-evidence issues raised by defendant in this matter, it does not address the defendant's remaining arguments. (pp. 19-23)

The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** for a new trial.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.**

2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

R.K.,

    Defendant-Appellant.


        Argued October 7, 2014 – Decided February 3, 2015

        On certification to the Superior Court,
        Appellate Division.

        Frank M. Gennaro, Designated Counsel, argued
        the cause for appellant (Joseph E. Krakora,
        Public Defender, attorney).

        Richard E. McKelvey, Assistant Prosecutor,
        Special Deputy Attorney General, argued the
        cause for respondent (James P. McClain,
        Atlantic County Prosecutor, attorney).

        Jenny M. Hsu, Deputy Attorney General,
        argued the cause for amicus curiae Attorney
        General of New Jersey (John J. Hoffman,
        Acting Attorney General, attorney).

    JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

    In this appeal the Court must determine whether defendant was afforded a fair trial, in light of numerous errors that occurred during the trial.

    This case stems from a nine-year-old victim's allegation that her mother's boyfriend, defendant R.K., repeatedly molested

her.  No physical evidence of the alleged sexual assaults was presented; therefore, the trial turned on whether the jury believed the victim or defendant.  Ultimately, defendant was convicted of endangering the welfare of a child and child abuse.

The trial court permitted three different witnesses to testify regarding the same underlying allegation under the fresh-complaint doctrine.  That testimony, however, included details and graphic demonstrations, and improperly bolstered the victim's credibility.  Thus, the purported fresh-complaint testimony in this case went far beyond the bounds that the doctrine permits.  Moreover, defendant argues the victim's mother and sister improperly bolstered her credibility by stating they believed her allegations, and that it was not in her character to lie.  Finally, defendant asserts that the trial court erred when it barred proposed testimony from a defense witness that defendant's girlfriend suspected he cheated on her and was planning to leave him as her testimony went to bias and was admissible.

This case turned entirely on witness-believability.  We hold that the aforesaid errors that occurred denied defendant a fair trial.  For the reasons that follow, we reverse the Appellate Division judgment.  Admission of the fresh-complaint testimony, bolstering of the victim's credibility, and exclusion

2

of bias testimony constituted reversible error.  We remand to the trial court for a new trial.

In light of our decision of these issues, we do not address defendant's remaining arguments.

I.

Defendant and his girlfriend, K.G., had two children:  K.K. and R.K.  Also living with them was K.G.'s daughter, C.G., then age nine.  Although defendant was not C.G.'s biological father, he had been in her life since she was fifteen months old and acted as C.G.'s stepfather and disciplinarian.  C.G. referred to defendant as "daddy."

On March 30, 2009, K.G. left K.K. and C.G. in her car while she ran some errands.  While the children were waiting, C.G. told K.K. that defendant sometimes had her come to the couch and "rub his pee pee."  When their mother K.G. returned, K.K. told her what C.G. had said.

K.G. immediately drove back to the house where she sat down with her daughters.  C.G. told her mother that defendant had made her touch his private area "until yellow-white stuff came out" and moved her hands in a masturbatory motion.  K.G. packed their belongings and called her father to pick up her and her children.

Later, at K.G.'s parents' house, C.G. told her mother that defendant had engaged in this activity with her at least ten

3

times.  C.G. also told her mother that during a trip with defendant to a recycling center, defendant touched and licked her private parts.  C.G. indicated to her mother that she had told defendant she did not want to engage in these activities, but defendant told C.G. that if she refused, "[she] wouldn't be living at the house anymore."  K.G. then contacted the Little Egg Harbor Township Police Department.

The next day, Trooper John Villamil interviewed C.G. During the interview, C.G. omitted the allegation regarding the incident at the recycling center.  After speaking with C.G., Trooper Villamil sought and obtained a warrant for defendant's arrest.  On April 3, 2009, the U.S. Coast Guard apprehended defendant while he was at work on a clamming vessel at sea. Defendant denied engaging in sexual activity with C.G., stating that he never had sexual feelings towards her, nor did he ever take her out of her bedroom.  Defendant indicated his belief that C.G. began to resent him when K.G. sent their cat away, after defendant placed the cat in the same pen as their pit bull.  Moreover, defendant stated that he and C.G. argued because C.G. did not keep up with her schoolwork.  Defendant said that he had spanked C.G. in public the day before C.G. made the allegations, and that he believed the allegations stemmed from that incident.

After defendant's arrest, Trooper Villamil interviewed K.G. It was then that the trooper was informed about what had happened at the recycling center. The case was transferred to the Atlantic County Prosecutor's Office. Detective Bill Adamson attempted to interview C.G. but she became upset when asked about the recycling center incident. Eventually, C.G. confirmed the cunnilingus allegation to the detective.

A.

On June 16, 2009, a grand jury charged defendant with: second-degree sexual assault, contrary to N.J.S.A. 2C:14-2b; second-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4; and fourth-degree child abuse, contrary to N.J.S.A. 9:6-3. On January 6, 2011, defendant was charged in a superseding indictment with: first-degree aggravated sexual assault, contrary to N.J.S.A. 2C:14-2(a); second-degree sexual assault, contrary to N.J.S.A. 2C:14-2(b); second-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4; and fourth-degree child abuse, contrary to N.J.S.A. 9:6-3.

Between May 2 and May 6, 2011, defendant was tried before a jury. The State presented C.G., K.G., K.K., and the two investigating officers as witnesses. Defendant testified and presented several character witnesses on his behalf.

Before trial, the State sought permission to present testimony from K.G. and K.K. under the fresh-complaint doctrine.

5

The testimony was intended to recount their conversations with C.G. regarding the alleged abuse. The trial court admitted the testimony as evidence of the allegation, but not as proof of the underlying claim.

At trial, K.G. testified that C.G. told her defendant made her "touch his private area," and that defendant made her "touch him and go like this until yellow-white stuff came out of his private area." While testifying, K.G. demonstrated the masturbatory motion C.G. had made. K.G. also noted C.G.'s claim that defendant threatened to harm her, her family, and her cat if C.G. ever told anyone.

K.K. also provided fresh-complaint testimony. She testified that C.G. alleged "that every night before a special occasion, [defendant] would come in and tell her to come out on the couch and rub his pee pee." K.K. testified on direct examination: "I was kind of, like I was sad for her and I believed her because it's really sad. She wouldn't be making up things if it was not bad."

The trial judge did not instruct jurors that fresh-complaint testimony may not be considered as substantive evidence of the underlying allegation, and no such instruction was requested.

B.

6

A defense witness, a friend of K.G., was offered for the purpose of providing testimony that K.G. had said she suspected defendant cheated on her, and that K.G. planned to leave him. The prosecutor objected on hearsay grounds. Defense counsel argued that this evidence went to bias; however, the trial judge sustained the objection, and the testimony was excluded.

## C.

The jury acquitted defendant of aggravated sexual assault, but failed to reach a verdict on the sexual assault charge. However, the jury found defendant guilty of endangering the welfare of a child and child abuse. Defendant moved for a new trial based on the inconsistency of the verdicts; however, the motion was denied.

The trial court sentenced defendant to a nine-year prison term, with a 54-month period of parole ineligibility.

## II.

Defendant appealed. On May 17, 2013, in an unpublished, per curiam decision, the Appellate Division affirmed defendant's conviction and sentence.

The appellate panel found that the trial court did not abuse its discretion by admitting the fresh-complaint testimony. The panel found that K.G.'s testimony was not excessive, and that it instead was "limited to the details necessary to describe the nature of C.G.'s complaint." Moreover, the panel

7

held that neither K.G.'s nor K.K.'s testimony was "so detailed as to violate the fresh-complaint doctrine." Finally, the panel determined that the trial court's failure to provide a fresh-complaint limiting instruction did not rise to the level of plain error. This Court granted defendant's petition for certification. State v. R.K., 216 N.J. 365 (2013).

## III.

Defendant argues that the trial court's admission of overly detailed and cumulative fresh-complaint testimony was plain error. Further, defendant argues that the trial court's failure to provide a limiting instruction -- that fresh-complaint testimony may not prove defendant's guilt nor bolster a victim's credibility -- was plain error.

Defendant contends that K.G.'s testimony was excessive, as it included "graphic details." Specifically, K.G. reenacted the "graphic physical demonstration" C.G. gave her mother. Defendant argues that K.K.'s testimony was duplicative and bolstered C.G.'s credibility because K.K. indicated that C.G. would not make things up. Defendant further argues that K.G. was biased against him, and the trial court improperly excluded K.G.'s friend's admissible testimony supporting that bias.

Defendant argues that there were several additional errors at trial. Defendant claims that the prosecutor improperly used defendant's prior convictions during her cross-examination.

8

Defendant argues that the prosecutor's assertion that he had "no problem breaking the law" suggested he had a criminal character, and was therefore guilty.

Moreover, defendant argues that the prosecutor improperly bolstered C.G.'s credibility in her summation, misinformed the jury by stating they "are the law," and commented on C.G.'s "future memories," a fact that was not in evidence.

Defendant also contends that Trooper Villamil's testimony, which created the impression that defendant was so dangerous he had to be apprehended at sea, was prejudicial and unnecessary.

In response, the State argues that the admission of fresh-complaint testimony was not erroneous. The State asserts that K.G. testified with minimal detail, that each component of K.G.'s testimony was necessary, and that she did not exceed any facts provided by C.G. herself. As to K.K.'s testimony, the State argues that it was not cumulative, and that it was important for the jury to hear K.K.'s side of the story.

The State notes that defendant failed to request a limiting instruction, and contends that the court's failure to provide such an instruction does not rise to the level of plain error.

The State also maintains that it complied with the trial judge's instructions regarding defendant's prior convictions: the prosecutor did not improperly use the prior convictions during cross-examination; the jury was properly instructed on

9

those convictions; and no connection could be drawn between defendant's past crimes and the charged offense.

With respect to the witness testimony, the State submits that Trooper Villamil's reference to the warrant was not prejudicial, and that K.K.'s testimony did not violate defendant's right to a fair trial. The State argues that excluding evidence of K.G.'s bias was correct, because the information was remote and only tenuously connected to the allegations against defendant.

As to the summation, according to the State, the prosecutor summarized the State's evidence, rejected the defense's theory, and framed jurors as the fact-finders. The State views the prosecutor's statement that "C.G. had no reason to lie" as directly responsive to defense counsel's assertion that C.G. wanted to get rid of defendant and resented his discipline. Further, the State argues that the prosecutor properly responded to defense counsel's highlighting of C.G.'s failure to complain consistently and her failure to complain at an earlier time. The State argues that the prosecutor did not "inflame the jurors' passions," but instead, persuaded the jury to convict based on its factual findings.

Finally, the State contends that defendant's argument regarding the inconsistent verdict is contrary to well-

established law, the verdicts were supported by the evidence, and defendant's sentence was not excessive.

The Attorney General, as amicus, argues that the fresh-complaint testimony is appropriate and that the omission of a limiting instruction was not erroneous. Further, the Attorney General contends that the fresh-complaint testimony "added practically nothing" because C.G. provided a more detailed account than any of the fresh-complaint witnesses. Finally, the Attorney General argues that even if the testimony violated the fresh-complaint doctrine, it would have been admitted under the tender-years exception to the hearsay rule because C.G. was under twelve when she made these allegations.

IV.

A.

Our evaluation of defendant's primary argument requires that we first examine the fresh-complaint doctrine. That doctrine allows the admission of evidence of a victim's complaint of sexual abuse, otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is fabricated. See State v. Hill, 121 N.J. 150, 163 (1990); State v. Balles, 47 N.J. 331, 338 (1966), cert. denied, 388 U.S. 461, 87 S. Ct. 2020, 18 L. Ed. 2d 1321 (1967). In order to qualify as fresh-complaint evidence, the victim's statement must have been made spontaneously and

11

voluntarily, within a reasonable time after the alleged assault, to a person the victim would ordinarily turn to for support. State v. W.B., 205 N.J. 588, 616 (2011); Hill, supra, 121 N.J. at 163 (citing State v. Tirone, 64 N.J. 222, 226-27 (1974)); Balles, supra, 47 N.J. at 338-39. These requirements are relaxed when they are applied to juvenile victims. State v. Bethune, 121 N.J. 137, 143-44 (1990). This Court has recognized that children may be "too frightened and embarrassed to talk about" the sexual abuse they have encountered, and therefore, juvenile victims are given additional time to complain, and their complaint may be elicited through non-coercive questioning. Ibid.

Only the facts that are minimally necessary to identify the subject matter of the complaint should be admitted; the fresh-complaint testimony is not to be used "to corroborate the victim's allegations concerning the crime." Id. at 146; see also W.B., supra, 205 N.J. at 617 ("A witness may testify only to the general nature of the complaint, and unnecessary details of what happened should not be repeated."). Therefore, the trial court is required to charge the jury that fresh-complaint testimony is not to be considered as substantive evidence of guilt, or as bolstering the credibility of the victim; it may only be considered for the limited purpose of confirming that a complaint was made. Bethune, supra, 121 N.J. at 147-48; State

12

v. P.H., 178 N.J. 378, 393 (2004) (asserting that Bethune "required" courts to give limiting instruction).

When a defendant fails to object to an erroneous or omitted limiting instruction, it is viewed under the plain-error rule, Rule 2:10-2. Thus, the error will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached. State v. Daniels, 182 N.J. 80, 95 (2004). Plain error is more likely to be found if there is any indication that jurors considered the fresh-complaint testimony for an improper purpose. See, e.g., State v. Williams, 377 N.J. Super. 130, 152 (App. Div.), certif. denied, 185 N.J. 297 (2005). However, if the State's case is particularly strong, any fresh-complaint instruction errors may be deemed harmless. Tirone, supra, 64 N.J. 227.

Finally, in order to reduce the possibility of duplicative testimony, trial courts have discretion to determine whether multiple fresh-complaint witnesses may testify. Hill, supra, 121 N.J. at 169. This exercise of discretion depends on the strength of the State's case because the testimony may have already been established by prior witnesses. Id. at 169-70. If the trial judge finds that the fresh-complaint criteria has been met, then he or she may "assess, in light of the rule's narrow purpose of negating inferences that the victim had failed to

13

complain, whether repeated testimony" would be irrelevant or prejudicial. Ibid.

In Bethune, supra, fresh-complaint testimony was elicited from a hospital worker, who referenced the "specific act of penetration," and indicated that the child had been assaulted "many times." 121 N.J. at 147. Contrary to the worker's statement, however, the victim testified that there had only been a single incident of assault. Ibid. Further, the defendant was only on trial for "one specific incident of sexual abuse." Ibid. Therefore, the Court concluded that the hospital worker's testimony was "highly prejudicial to [the] defendant," and appeared to be "excessively detailed to qualify under the fresh-complaint rule" because no other evidence supported those claims. Ibid. However, the Court ultimately found the testimony admissible under the tender-years exception to the hearsay rule, ibid., which states:

> [A] statement made by a child under the age of 12 relating to sexual misconduct committed with or against that child is admissible in a criminal, juvenile, or civil proceeding if (a) the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at such time as to provide the adverse party with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to Rule 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and (c) either (i) the child testifies at the proceeding, or (ii)

14

the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse; provided that no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of Rule 601.

[N.J.R.E. 803(c)(27).]

In Balles, supra, the Court determined that fresh-complaint testimony is not improper when the testimony "merely show[s] the nature of the complaints . . . [that] would have been unintelligible" had more detail not been given. 47 N.J. at 339. In that case, a mother testified that her daughter indicated the defendant had "put his hands down her panties and had touched here." Ibid. The Court found that the mother did not elaborate on the victim's testimony, and instead determined that what the mother said was necessary to get the point across clearly and intelligently. Ibid.

### B.

We next turn to bolstering of witness testimony. The State may not attack one witness's credibility through another witness's assessment of that credibility. State v. Frisby, 174 N.J. 583, 593-94 (2002); State v. Clausell, 121 N.J. 298, 337-38 (1990). In Frisby, supra, the court found that an investigator's testimony was erroneous when he testified that one witness was "more credible" than the other. 174 N.J. at

15

594-96. Likewise, in <u>Clausell</u>, <u>supra</u>, the court found that when a police composite artist testified that the key prosecution witness was a "very good witness," he "improperly bolstered [her] credibility," even in the absence of an objection. 121 <u>N.J.</u> at 338.

If a defendant fails to object to improper testimony at trial, the plain error rule applies. <u>See</u> <u>R.</u> 2:10-2; <u>State v. Bogen</u>, 13 <u>N.J.</u> 137, 141-42 ("Ordinarily a defendant will not be heard to claim prejudice if defense counsel does not interpose a timely and proper objection to the improper remarks. . . ."), <u>cert. denied</u>, 346 <u>U.S.</u> 825, 74 <u>S. Ct.</u> 44, 98 <u>L. Ed.</u> 350 (1953).

We also consider the admissibility of bias evidence. At trial, a party may introduce evidence that an adverse witness is biased. <u>State v. Gorrell</u>, 297 <u>N.J. Super.</u> 142, 149 (App. Div. 1996) ("It is elementary that a party may show bias, including hostility, of an adverse witness." (quoting <u>State v. Smith</u>, 101 <u>N.J. Super.</u> 10, 13 (App. Div. 1968), <u>certif. denied</u>, 53 <u>N.J.</u> 577 (1969))); <u>see also</u> <u>Clayton v. Freehold Twp. Bd. of Educ.</u>, 67 <u>N.J.</u> 249, 253 (1975); <u>State v. Pontery</u>, 19 <u>N.J.</u> 457, 472 (1955) ("[I]t is proper for either the defense or the prosecution to show the interest of a witness as bearing upon the witness' credibility.").

Parties may demonstrate bias through extrinsic evidence.

N.J.R.E. 607.  Such extrinsic evidence may include statements or

"utterances":

> The objection on the ground of hearsay to
> defendant's proffer of witnesses who would
> have testified about [a key State witness's]
> threats against defendant was also mistaken.
> Wigmore states the pertinent rule as follows:
> "Utterances indirectly indicating fear, ill-
> will, excitement, or other emotion on the part
> of the speaker are also admissible, whether
> the person be one whose state of mind is in
> issue . . . or a witness whose bias is to be
> ascertained."
>
> [Gorrell, supra, 297 N.J. Super. at 149-50
> (quoting 6 Wigmore on Evidence § 1790 at 326
> (Chadbourn rev. 1976)).]

Hearsay is an out-of-court statement offered "to prove the

truth of the matter asserted" therein.  N.J.R.E. 801.  N.J.R.E.

803(c)(3) permits the admission of out-of-court statements that

go toward a declarant's state of mind.

### V.

We now turn to the facts of this case and consider whether

defendant was provided a fair trial.

### A.

Here, K.G.'s fresh-complaint testimony was excessive.  It

did more than convey the nature of C.G.'s complaint, was

excessively graphic, and included threats made to the victim

that were not elicited from the victim herself.

17

Our courts have been consistent in allowing fresh-complaint witnesses to provide enough basic information that the jury will have a sense of the complaint's context.  E.g., Balles, supra, 47 N.J. at 339 (determining that testimony that defendant put his hands down victims panties and touched here was permissible).  However, our courts "have adhered strictly and uniformly to the principle of disallowing excessive details." Bethune, supra, 121 N.J. at 147.

Here, C.G. claimed that defendant forced her to touch and masturbate his penis, and that he touched and licked her vagina. When K.G. testified, however, her testimony went beyond C.G.'s and asserted that defendant made C.G. "touch him and go like this until yellow-white stuff came out of his private area." K.G. also demonstrated for the court the masturbatory motion. While the facts of ejaculation and masturbation may fall within the boundaries of C.G.'s testimony, K.G.'s description of the "yellow-white stuff" that "came out" was provocative and more descriptive than originally provided.

Further, K.G. testified that defendant threatened C.G., saying that if she told anyone, "he would hurt her and he would hurt her family and her cat."  Those threats were not elicited from C.G. at trial.

The combination of K.G.'s description and the demonstration exceeded the proper boundaries allowed in fresh-complaint

18

testimony.  The testimony did more than rebut a charge of fabrication based on silence.

Further, the testimony elicited from K.G. was not only excessive, it was prejudicial.  The narrow purpose of fresh-complaint testimony extends only to the fact of the victim's complaint, not to its details.  W.B., supra, 205 N.J. at 616-17; Hill, supra, 121 N.J. at 163.

We further find that the State's case was premised in its entirety on witness credibility, given defendant's affirmative denial and the lack of physical evidence.  Thus, the prejudicial omission of the limiting instruction, and the excessive fresh-complaint testimony denied defendant a fair trial.  Therefore, we reverse on those grounds.

B.

We turn next to assess whether C.G.'s stepsister, K.K. and their mother, K.G. improperly bolstered C.G.'s credibility and thereby prejudiced defendant.

While C.G.'s credibility was clearly relevant, other witnesses are prohibited from giving their opinions about her credibility.  See Frisby, supra, 174 N.J. at 591-96; Clausell, supra, 121 N.J. at 337-38.  K.K.'s testimony violated this principle when she testified that she "believed" her sister, and that C.G. "wouldn't be making things up if it was not bad."  K.K.'s testimony further violated this principle, when, in

19

response to a question about whether or not C.G. told lies before, she testified "[n]ot like this. She would never lie about something like this."

Because there was no objection at trial to these comments, the errors call for a plain-error analysis. In Frisby, supra, 171 N.J. at 594-96, no objection was made to the use of improper bolstering testimony. We nevertheless found the testimony plainly erroneous, noting that "[t]his case was a pitched credibility battle between [two individuals] on the pivotal issue of whether [one person] promised to care for [another]. Any improper influence on the jury that could have tipped the credibility scale was necessarily harmful and warrants reversal." Id. at 596. This case calls for the same result. Here, like in Frisby, this case presented a "pitched credibility battle" between C.G. and defendant over who was telling the truth. As such, the improper witness bolstering was harmful to defendant and prejudiced his case. Therefore, we conclude that the bolstering of witness testimony was prejudicial to defendant and constituted reversible error.

We also conclude that the testimony about the adverse witness's bias was admissible. The proffered testimony that K.G.'s friend knew defendant had cheated on K.G., and apparently, that K.G. intended to leave him was not hearsay because it was not being offered for the truth that defendant

20

was cheating or that K.G. planned to leave, but rather, to show that K.G. might have an interest to lie about defendant. We therefore find that excluding the bias testimony was also reversible error.

Defendant also raises several other arguments. Specifically he contends that the trooper's reference to the arrest warrant during his testimony was misleading and prejudicial. During his testimony, the trooper testified to the circumstances of how he obtained the warrant and to the circumstances of the arrest, stating "[t]he defendant was apprehended by the U.S. Coast Guard. He was on a clam[m]ing vessel out at sea and they boarded the ship and took custody of him."

Defendant also contends that the admission of prior conviction evidence was erroneous. Before defendant testified, the trial court determined that defendant's prior convictions were admissible in order to attack his credibility. However, the trial judge limited admission to the number, degree, and nature of offenses, not to the counts or the facts. During direct examination of defendant, defendant discussed his prior convictions.

On cross-examination, the prosecutor asked the following questions: "So you have no problem breaking the law if it's

necessary for your needs, correct?"; "You do what you have to do to get what you want, correct?"; "Well, you certainly weren't law-abiding when you committed those crimes, were you?"; "But now you've told this jury today you would never do anything to [C.G.], right?"

Defendant further contends that during the State's summation the prosecutor asserted that C.G. "had an incentive to tell the truth" and "has no reason to lie." In her conclusion, the prosecutor stated:

> [m]embers of the jury, when we all look back on our childhoods, we think about baseball games, playing soccer, maybe some ballet lessons, but when [C.G.] thinks back on her childhood, she's going to remember the defendant and she's going to remember what he did to her. You, ladies and gentlemen, you are the law here today. You have the power. Tell that man I know what you did to [C.G.]. Tell him you know what he made [C.G.] do. Tell him he's not going to get away with it. Find the defendant guilty on all counts of the indictment. Thank you.

D.

In light of our resolution of the fresh-complaint, bolstering and bias-evidence issues raised by defendant in this matter, we do not address the defendant's arguments regarding the trooper's reference to the arrest warrant, the prosecutor's use of prior convictions during cross-examination and the prosecutor's summation. However, we note that defendant's arguments raise concerns regarding the propriety of the

22

trooper's reference to the arrest warrant and the prosecutor's cross-examination and summation.  Our determination not to address those issues does not signify our approval.

VI.

For the reasons set forth above, the judgment of the Appellate Division is reversed and the case is remanded for a new trial.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.

SUPREME COURT OF NEW JERSEY

NO. __A-39___                          SEPTEMBER TERM 2013

ON CERTIFICATION TO      Appellate Division, Superior Court
                         _____


STATE OF NEW JERSEY,

        Plaintiff-Respondent,

            v.

R.K.,

        Defendant-Appellant.


DECIDED _____ February 3, 2015 _____
           _____ Chief Justice Rabner _____  PRESIDING
OPINION BY _____ Justice Fernandez-Vina _____
CONCURRING/DISSENTING OPINIONS BY  _____
DISSENTING OPINION BY  _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1