**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1144-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

REMARNO CHAMBERS,

    Defendant-Appellant.

_____

        Submit December 18, 2017 — Decided July 6, 2018

        Before Judges Messano and Vernoia.

        On appeal from Superior Court of New Jersey,
        Law Division, Cumberland County, Indictment
        No. 12-09-0951.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Michele A. Adubato, Designated
        Counsel, on the brief).

        Jennifer Webb-McRae, Cumberland County
        Prosecutor, attorney for respondent (Kim L.
        Barfield, Assistant Prosecutor, of counsel and
        on the brief).

PER CURIAM

    Defendant Remarno Chambers appeals from his conviction by a

jury of fourth-degree possession of marijuana with intent to

distribute, N.J.S.A. 2C:35-5(b)(12). Because the court erred by admitting evidence of other crimes and wrongs in violation of N.J.R.E. 404(b), and by allowing witnesses to testify concerning the veracity of other witnesses, and those errors were clearly capable of producing an unjust result, we reverse and remand for a new trial.

I.

In December 2010, defendant was a substitute teacher at Vineland High School. Defendant permitted his eighteen-year-old cousin, Lenmarve McIntosh, and McIntosh's friends from Vineland High School and another local high school, to "hang out" at defendant's apartment, where they played games, drank beer and used marijuana.

On the evening of December 25, 2010 and in the early morning hours of December 26, McIntosh's friend I.S. and others went to defendant's apartment. I.S. saw marijuana that defendant kept in a closet safe, and observed others present at the apartment smoking marijuana. After I.S. took a blue pill that defendant gave him, he blacked out, and the following morning woke up naked in defendant's bed. As the result of a police investigation, I.S. reported what occurred and alleged defendant sexually assaulted him.

During a January 7, 2011 interrogation by Vineland Police detectives, defendant admitted having marijuana at his apartment, smoking marijuana with McIntosh at his apartment, and permitting McIntosh and I.S. to sleep overnight with him in his bedroom on an evening during the 2010 "Christmas weekend." Following the interrogation, Vineland Police executed a search warrant at defendant's apartment and found a bottle containing alprazolam pills in a drawer, and two bags of marijuana, two digital scales and $1595 in a closet safe.

Defendant was charged in an indictment with committing the following offenses "[o]n or about" December 26, 2010: second-degree attempted aggravated sexual assault upon I.S., N.J.S.A. 2C:14-2(a)(7) and N.J.S.A. 2C:5-1(a)(1) (count one), third-degree aggravated criminal sexual contact with I.S., N.J.S.A. 2C:14-3(a) (count two), fourth-degree possession with intent to distribute marijuana, N.J.S.A. 2C:35-5(b)(12) (count three), third-degree distribution of a controlled dangerous substance, alprazolam, N.J.S.A. 2C:35-5(b)(3) (count four), and third-degree reckless endangering, N.J.S.A. 2C:12-2(b)(2)[1] (count five). Count five was dismissed before trial.

---

[1] N.J.S.A. 2C:12-2(b)(2) was repealed effective January 11, 2016. L. 2015, c. 186, § 2.

Defendant was tried before a jury, which returned a guilty verdict on count three, fourth-degree possession of marijuana with intent to distribute, and not guilty on count four. The jury could not reach a verdict on the sex offenses alleged in counts one and two. Defendant was retried on counts one and two, but the jury could not reach a verdict and the court granted defendant's motion to dismiss those counts. The court imposed a three-year probationary sentence on count four, and defendant appealed.

Defendant presents the following arguments for our consideration:

POINT I

THE DEFENDANT'S JANUARY 7, 2011 STATEMENT TO POLICE SHOULD NOT HAVE BEEN ADMITTED INTO EVIDENCE BECAUSE HIS FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION WAS VIOLATED.

POINT II

EVIDENCE DEFENDANT DISTRIBUTED [MARIJUANA] AND POSSESSED IT ON DATES NOT CHARGED IN THE INDICTMENT WAS IMPROPER N.J.R.E. 404(b) EVIDENCE THAT SHOULD HAVE BEEN EXCLUDED FROM EVIDENCE.

POINT III

THE STATE'S CROSS-EXAMINATION OF DEFENSE WITNESSES WAS IMPROPER, PREJUDICIAL AND DEPRIVED DEFENDANT OF A FAIR TRIAL.

Our review of a court's determination concerning the suppression of statements made during a custodial interrogation is narrow. Where factual findings are "supported by sufficient credible evidence in the record," deference is required. State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). "Corrective action" is appropriate only "when factual findings are so clearly mistaken — so wide of the mark — that the interests of justice demand intervention." Id. at 381. Our review of legal issues is de novo. Id. at 380.

As he did before the trial court, defendant contends on appeal that during the January 7, 2011 interrogation, the officers violated his rights by questioning him after he invoked his right to counsel. He argues the court erred by denying his motion to suppress statements he made during what he claims was his initial invocation of his right to counsel.[2] We are not persuaded.

---

[2] Defendant argued he invoked his right to counsel on two occasions during the interrogation. The State did not dispute defendant invoked his right to counsel during the latter part of the interrogation when he stated, "I need my lawyer to be here with me . . . ." The court agreed defendant's declaration constituted an invocation of his right to counsel and suppressed all of his statements following the invocation. We therefore address only defendant's contention that the court erred by finding he did not invoke his right to counsel earlier in the interrogation.

A defendant's "right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this state's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503." Id. at 381 (quoting State v. Nyhammer, 197 N.J. 383, 399 (2009)). If a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning[,]" State v. Alston, 204 N.J. 614, 620 (2011) (quoting Miranda v. Arizona, 384 U.S. 436, 444-45 (1966)), and the "interrogation may not continue until either counsel is made available or the suspect initiates further communication sufficient to waive the right to counsel," ibid.

"[A] suspect need not be articulate, clear, or explicit in requesting counsel; any indication of a desire for counsel, however ambiguous, will trigger entitlement to counsel." Id. at 622 (quoting State v. Reed, 133 N.J. 237, 253 (1993)). Thus, "if the words amount to even an ambiguous request for counsel, the questioning must cease, although clarification is permitted; if the statements are so ambiguous that they cannot be understood to be the assertion of a right, clarification is not only permitted but needed." Id. at 624.

In State v. Chew, 150 N.J. 30, 63 (1997), the Court held that a suspect who asked his mother to call his lawyer in the presence

6

of police officers made "an equivocal invocation of the right to counsel that had to be clarified before questioning could take place." Similarly, in State v. Elmore, 205 N.J. Super. 373, 380 (App. Div. 1985), we concluded that a suspect's statement to her mother "that she was not allowed to have a lawyer" was an equivocal request for counsel.

In Alston, 204 N.J. at 625-27, the Court found the defendant's statement, "'should I not have a lawyer?' was, in actuality, not an assertion of a right, ambiguous or otherwise" because it was a "question . . . that amounted to defendant's request for advice about what the detective thought that defendant should do." Id. at 626. The officer responded appropriately by asking, "[do y]ou want a lawyer?" Ibid. (alteration in original). The defendant then made it clear that he did not want a lawyer, stating, "No, I am asking you guys, man." Ibid.

In State v. Messino, 378 N.J. Super. 559, 578 (App. Div. 2005), we found the defendant's statement, "Do you think I need a lawyer?" was not an ambiguous invocation of the right to counsel. We concluded defendant did not request an attorney, but rather asked only if the officer "whether he thought defendant needed a lawyer." Id. at 578. We distinguished cases where it was determined a defendant made an ambiguous invocation of the right to counsel, including Maglio v. Jago, 580 F.2d 202, 203 (6th Cir.

1978), where the suspect stated, "Maybe I should have an attorney," and <u>United States v. Clark</u>, 499 F.2d 802, 805 (4th Cir. 1974), where the suspect stated, "I had better talk to a lawyer." <u>Messino</u>, 378 N.J. Super. at 578.

Here, defendant argues that after the detectives informed him of his <u>Miranda</u> rights, he invoked his right to counsel during the following exchange:

> [Detective]: Do you understand each of your rights?
>
> [Defendant]: From everything you just read to me?
>
> [Detective]: Yes.
>
> [Defendant]: Yes.
>
> [Detective]: Okay. What you can do is you can look this over. I just need you to initial with your initials numbers one through five and then sign here that you understand. This is just what I read to you. It's in English as well as Spanish.
>
> [Defendant]: Now because I don't understand why here and I'm still signing this without (indiscernible).
>
> [Detective]: Well this is, this is you signing that you understand what your rights are prior to us talking about the reasons why you're here.
>
> [Defendant]: Okay. So this isn't, once again . . .
>
> [Detective]: That . . .

[Defendant]: This isn't . . .

[Detective]: That is your rights. We're just advising you of what your rights are. Do you understand what your rights are?

[Defendant]: <u>Yeah but I do have my own personal attorney. So I don't know if, I don't know what you need to ask me. So I don't know if I need my attorney.</u>

[Detective]: Okay. Well after you were to sign this indicating that you do understand your rights . . .

[Defendant]: Uh huh.

[Detective]: Then we are going to advise you of what the allegations are.

[Defendant]: Uh huh.

[Detective]: Then that's when you would make a determination whether you would want to speak with us or not speak with us.

[Defendant]: Okay.

[Detective]: This is simply just a form indicating that we advised you of what your rights are and that you understand that you have the right either to talk to us . . .

[Defendant]: Uh huh.

[Detective]: To not talk to us, to start talking to us, stop talking. These are, these are what your rights are. This is what we've just read to you.

[Defendant]: Okay.

[Detective]: Do you have any questions at all about your rights?

A-1144-15T3

> [Defendant]: No. Based off what you read to me, no.
>
> [(Emphasis added).][3]

When reviewing a trial court's denial of a motion to suppress a defendant's statements, we must "engage in a 'searching and critical' review of the record[.]" State v. Maltese, 222 N.J. 525, 543 (2015) (quoting State v. Hreha, 217 N.J. 368, 381-82 (2014)). We have considered defendant's statements to the detectives in the context of the dialogue between them and are convinced defendant's declaration that he had a personal attorney, and his statement "I don't know if I need my attorney," did not constitute an invocation of his right to counsel.

In Alston and Messino, it was determined the defendants' inquiries to the interrogating officers about whether they needed an attorney did not constitute invocations of the right to counsel. Alston, 204 N.J. at 626-27; Messino, 378 N.J. Super. at 578. Here, defendant expressed the identical uncertainty about his need for an attorney as the defendants in Alston and Messino — by stating he did not know if he needed an attorney — but did not direct an inquiry to the detectives. Defendant did not request an attorney,

---

[3] We rely on a transcript of the interrogation which was not admitted in evidence, but was supplied to the trial court when it ruled on defendant's suppression motion, and which the parties agree is accurate. The parties supplied the transcript at our request.

or suggest he wished to have an attorney present before any further questioning. His statements conveyed only that he had an attorney and had not yet decided whether the attorney's presence was necessary. Like the defendants in Alston and Messino, defendant's expression of uncertainty was "not an assertion of a right, ambiguous or otherwise," Alston, 204 N.J. at 626, but instead was a declaration only that he "[did not] know" whether he needed his lawyer at that time. As we observed in Messino, "[t]here is no dispute that defendant was told that he had a right to a lawyer. Defendant could have requested an attorney. His statement . . . was not such a request." 378 N.J. Super. at 578. Thus, the motion court correctly determined defendant did not invoke his right to counsel, and properly denied defendant's motion to suppress his statements.

III.

Defendant next argues the court admitted testimony showing he possessed and distributed marijuana on dates not charged in the indictment that should have been excluded under N.J.R.E. 404(b) as inadmissible evidence of other crimes or wrongs. More particularly, defendant argues the court erred by admitting the following testimony: (a) Jose Muniz's testimony that in December 2010 he saw defendant bring marijuana from defendant's bedroom and give it to individuals to "roll up"; (b) Cheyanne Cuevas's

testimony that in December 2010[4] he saw defendant possess, smoke and share marijuana with others, and purchased marijuana from defendant on more than one occasion; (c) McIntosh's testimony he saw people smoking marijuana at the 2010 Christmas party at defendant's apartment, but the guests brought their own marijuana; and (d) Cheyanne Cuevas's testimony he smoked marijuana at defendant's apartment on December 28, 2010, but did not recall who supplied the marijuana. Defendant contends the indictment charged only possession of marijuana with intent to distribute on or about December 26, 2010, and the testimony showing defendant committed crimes or wrongs at other times should have been excluded under N.J.R.E. 404(b) and N.J.R.E. 403.

"A trial court's ruling on the admissibility of evidence is reviewed on appeal for abuse of discretion." State v. Rose, 206 N.J. 141, 157 (2011). Under this standard, the trial court's decision to allow evidence should not be overturned "unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide [of] the mark that a manifest denial of justice resulted." State v. Lykes, 192 N.J. 519, 534

---

[4] Defendant argues Cuevas testified that "On December 10, he saw defendant in possession of [marijuana]." The State repeats this statement in its brief. The record, however, shows Cuevas actually testified that he observed defendant in possession of marijuana in December 2010.

(2007) (quoting <u>Verdicchio v. Ricca</u>, 179 N.J. 1, 34 (2004)). For admission of N.J.R.E. 404(b) evidence in cases where a trial court did not apply a balancing test, an appellate court conducts "its own 'plenary review' to determine its admissibility." <u>Rose</u>, 206 N.J. at 158. In addition, if the trial court does not determine the admissibility of evidence under the correct legal standard, its decision is not afforded any deference and the court reviews the issue de novo. <u>State v. Reddish</u>, 181 N.J. 553, 609 (2004).

"[N.J.R.E.] 404(b) serves as a safeguard against propensity evidence that may poison the jury against a defendant." <u>State v. Skinner</u>, 218 N.J. 496, 517 (2014). "[T]he underlying danger of admitting other-crime [or bad-act] evidence is that the jury may convict the defendant because he is 'a bad person in general.'" <u>Id.</u> at 514 (second alteration in original) (quoting <u>State v. Cofield</u>, 127 N.J. 328, 336 (1992)). "For that reason, any evidence that is in the nature of prior bad acts, wrongs, or, worse, crimes by a defendant is examined cautiously because it 'has a unique tendency' to prejudice a jury." <u>Ibid.</u> (quoting <u>Reddish</u>, 181 N.J. at 608). "Put simply, a defendant must be convicted on the basis of his acts in connection with the offense for which he is charged. A defendant may not be convicted simply because the jury believes that he is a bad person." <u>Ibid.</u>

A-1144-15T3

The initial determination required under N.J.R.E. 404(b) is whether the evidence is "intrinsic to the charged crime, and thus need only satisfy the evidence rules relating to relevancy, most importantly [N.J.R.E.] 403" or whether it "relates to 'other crimes,' and thus is subject to continued analysis under [N.J.R.E.] 404(b)." Rose, 206 N.J. at 179. If the evidence falls within N.J.R.E. 404(b)'s requirements, its admissibility is determined under the four-part test established in Cofield:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [127 N.J. at 338.]

"[E]vidence that is intrinsic to the charged crime is exempt from the strictures of [N.J.R.E.] 404(b) even if it constitutes evidence of uncharged misconduct that would normally fall under [N.J.R.E.] 404(b) because it is not 'evidence of other crimes, wrongs, or acts.'" Rose, 206 N.J. at 177 (quoting 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239, at 445 (1978)). For that reason, "evidence that is intrinsic to a charged crime need only satisfy the evidence

14

rules relating to relevancy, most importantly the [N.J.R.E.] 403 balancing test." Id. at 177-78. Under N.J.R.E. 403, relevant evidence may be excluded if its "probative value is substantially outweighed by the risk . . . of undue prejudice . . . ."

In Rose, the Court limited the scope of intrinsic evidence to the two categories established in United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010). See id. at 181 (first, second, and third alterations in original) (emphasis added) (observing "Green's tight description of intrinsic evidence narrows the field of uncharged misconduct that is excluded from [N.J.R.E.] 404(b)'s channeled analysis"). Ibid. "First, evidence is intrinsic if it 'directly proves' the charged offense." Id. at 180 (quoting Green, 617 F.3d at 248). "Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" Ibid. (quoting Green, 617 F.3d at 249).

Here, the court overruled defendant's objections to the disputed testimony concerning his involvement in the distribution of marijuana at times other than on the December 26, 2010 date charged in the indictment. The court rejected defendant's contention the evidence constituted inadmissible N.J.R.E. 404(b) evidence, did not conduct a Cofield analysis concerning its admissibility, and essentially determined the evidence constituted

15

intrinsic evidence that was admissible without regard to the requirements of N.J.R.E. 404(b).

We first consider whether the challenged testimony "is intrinsic to the charged crime," or "relates to 'other crimes,' and thus is subject to continued analysis under [N.J.R.E.] 404(b)." Id. at 179. Count three charged defendant with possession with intent to distribute marijuana N.J.S.A. 2C:35-5(b)(12). To establish defendant's guilt of the offense, the State was required to prove beyond a reasonable doubt that on or about December 26, 2010: (a) defendant possessed or controlled the marijuana recovered by the police and introduced into evidence; (b) defendant had the intent to distribute the marijuana when he possessed or had it under his control; and (c) defendant acted knowingly and purposely in possessing or having the marijuana under his control. See N.J.S.A. 35-5(b)(12); Model Jury Charges (Criminal), "Possession Of A Controlled Dangerous Substance With Intent To Distribute (N.J.S.A. 2C:35-5)" (rev. June 8, 2015).

In our view, Muniz's testimony that he saw defendant bring marijuana from his bedroom and give it to individuals to "roll up" during December 2010, and Cuevas's testimony that in December 2010 he saw defendant possess, smoke and share marijuana with others, and purchased marijuana on more than one occasion from defendant, was not intrinsic to the charge that on or about December 26,

2010, defendant possessed marijuana with intent to distribute. The testimony does not describe "uncharged acts performed contemporaneously" with or that "facilitate[ed] the commission of[,] the" December 26, 2010 offense charged in the indictment. See Rose, 206 N.J. at 180 (quoting Green, 617 F.3d at 249). To the contrary, the testimony described conduct occurring at times separate from the crime charged in count three, and the alleged conduct occurring at those times did not in any manner facilitate defendant's alleged commission of the crime of possession with intent to distribute marijuana on December 26, 2010. Thus, the testimony did not fall within the second category of intrinsic evidence recognized by the Court in Rose. Ibid.

The State contends the testimony constituted evidence within the first category of intrinsic evidence because it directly proved defendant possessed marijuana with intent to distribute on December 26, 2010. See ibid. "If uncharged misconduct directly proves the charged offense, it is not evidence of some 'other' crime." Green, 617 F.3d at 249. Where the evidence does not directly prove the charged offense, it constitutes evidence of "other crimes, wrongs, or acts," and is subject to the requirements of N.J.R.E. 404(b). See ibid.

The testimony of Muniz and Cuevas showing defendant distributed marijuana at times other than that charged in the

17

indictment does not "directly prove" that defendant possessed marijuana with intent to distribute on December 26, 2010. See Rose, 206 N.J. at 180; Green, 617 F.3d at 248-49. Contrary to the State's assertions, we are not convinced our decision in State v. Brockington, 439 N.J. Super. 311 (App. Div. 2015), requires a different conclusion.

In Brockington, we considered the admissibility of a detective's testimony about the defendant and another individual "engag[ing] in a series of six encounters with persons whom" the detective believed were purchasers of illicit drugs that occurred immediately preceding a drug transaction for which defendant was charged. Id. at 316-18. We determined the testimony was admissible as intrinsic evidence because it "directly prove[d]" the charged crimes: conspiracy to possess controlled dangerous substance (CDS) and to possess CDS with intent to distribute, and possession with intent to distribute. Id. at 328. Our determination, however, was based on facts not present here. As we noted, the testimony directly proved the offenses because it showed "defendant and [the other individual] engage[d] in a pattern of behavior that was repeated several times within a relatively short period on the day" the defendant committed the charged offenses. Id. at 332.

Here, the testimony showing defendant used and distributed marijuana on uncharged occasions in December 2010 is wholly dissimilar to the evidence we found was intrinsic in Brockington. In fact, in Brockington, we noted that the trial court excluded evidence of the detective's observations of defendant's participation in drug transactions prior to the date of the charged crime under N.J.R.E. 404(b). Id. at 315. Muniz and Cuevas's testimony does not show defendant distributed marijuana immediately preceding the alleged commission of the charged offense or directly prove he intended to distribute the marijuana he possessed at the time of the charged offense. The alleged uncharged distribution of marijuana does not fall within either category of intrinsic evidence defined in Rose. See Rose 206 N.J. at 180.

The court therefore erred by admitting the testimony concerning defendant's uncharged distribution of marijuana without determining its admissibility under N.J.R.E. 404(b) and Cofield. See id. at 179 (explaining that where evidence of uncharged crimes or wrongs is not intrinsic, its admissibility must be determined under N.J.R.E. 404(b)). We are convinced the erroneous admission of the testimony as intrinsic evidence was "clearly capable of producing an unjust result," R. 2:10-2, because it constituted highly prejudicial evidence that defendant committed other

uncharged drug-related offenses and created a realistic danger the "jury may [have] convict[ed] . . . defendant because he is a bad person in general." Cofield, 127 N.J. at 336 (citation omitted).

We are also convinced the court erred by allowing McIntosh's testimony he saw people smoking marijuana they brought to the 2010 Christmas party at defendant's apartment, and Cuevas's testimony he smoked marijuana at defendant's apartment on December 28, 2010, but did not recall who supplied it. The testimony is not intrinsic evidence under the Rose standard because it does not directly prove defendant committed the crime of possession with intent to distribute marijuana on or about December 26, 2010, or prove acts by defendant that facilitated that crime. See Rose, 206 N.J. at 180. In fact, the testimony does not describe any conduct or actions of defendant related to his alleged possession with intent to distribute marijuana.

Although the relevancy of the testimony is unclear, its admission permitted the inference that defendant engaged in uncharged crimes or wrongs by participating in the consumption of controlled dangerous substances brought by others in his home. The testimony constituted highly prejudicial evidence that defendant was engaged in uncharged criminal conduct and its admission was clearly capable of producing an unjust result. R. 2:10-2; State v. Randolph, 228 N.J. 566, 592 (2017).

In sum, we are convinced that admission of the challenged testimony of Muniz, McIntosh and Cuevas as intrinsic evidence was plain error. R. 2:10-2. We are therefore constrained to reverse defendant's conviction and remand for a new trial.

However, the court's determination the testimony of Muniz, McIntosh and Cuevas constituted admissible intrinsic evidence rendered it unnecessary for the State to argue the testimony was otherwise admissible under N.J.R.E. 404(b), or create a complete record in support of such a contention. Lacking such a record, we choose not to make a de novo determination on the admissibility of the testimony under N.J.R.E. 404(b). Cf. State v. Lykes, 192 N.J. 519, 534 (2007) (finding that where a trial court fails to conduct a required N.J.R.E. 404(b) analysis concerning the admissibility of evidence, a reviewing court may conduct the analysis de novo). The State may request leave to introduce all or portions of the testimony at the retrial, and the court shall determine the admissibility of any proffered testimony under N.J.R.E. 404(b) and the Cofield standard based on the record and arguments presented at that time.

IV.

Defendant next argues the court erred by permitting the State to elicit testimony from three defense witnesses, Weyldon Lindsey, Lorenzo Cordero and Tinniel Brown, commenting on the veracity of

the testimony of other witnesses and defendant's statement to the police. Defendant cites generally to the State's cross-examination of the witnesses, but argues the error of "greatest significance" occurred when Cordero was asked "whether he was wrong or was the defendant."

"[O]rdinarily, the scope of cross-examination of a witness rests in the discretion of the trial judge. An appellate court will not interfere with the exercise of such discretion unless clear error and prejudice are shown." State v. Adames, 409 N.J. Super. 40, 61 (App. Div. 2009) (quoting Glenpointe Assocs. v. Twp. of Teaneck, 241 N.J. Super. 37, 54 (App. Div. 1990)).

"[I]t [is] the jury's province to assess the credibility of all of the evidence." State v. Cole, 229 N.J. 430, 450 (2017). "[C]redibility is an issue which is peculiarly within the jury's ken[.]" State v. Frisby, 174 N.J. 583, 595 (2002) (quoting State v. J.Q., 252 N.J. Super. 11, 39 (App. Div. 1991)). The Court explained:

> The question of whether a particular witness is testifying in a truthful manner is one that must be answered in reliance upon inferences drawn from the ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as upon observations of the demeanor and character of the witness. The phenomenon of lying, and situations in which prevarications might be expected to occur, have traditionally been regarded as within the ordinary facility of

22

> jurors to assess. For this reason, the question of a witness' credibility has routinely been regarded as a decision reserved exclusively for the jury.
>
> [Id. at 594 (quoting J.Q., 252 N.J. at 39).]

Thus, "the mere assessment of another witness's credibility is prohibited." Ibid.; see also Kansas v. Ventris, 556 U.S. 586, 594 n.*, (2009) ("Our legal system . . . is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses . . . ."). "The State may not attack one witness's credibility through another witness's assessment of that credibility." State v. R.K., 220 N.J. 444, 458 (2015); see also State v. Bunch, 180 N.J. 534, 549 (2004) (finding the prosecutor's question, "So basically you want this jury to believe that everything that the officers came in here and testified to is untrue?" improper); Frisby, 174 N.J. at 593-94 (finding officer's testimony was improper because it constituted a credibility evaluation in favor of one witness and against the defendant).

The record shows that during the State's cross-examination, Lindsey testified he did not see anyone smoking marijuana during the evening of December 25, and early morning hours of December 26, 2010. The prosecutor then asked, "What if I were to tell you that [McIntosh], himself, testified in that very seat that you're

23

sitting in that he smoked marijuana that night?" Defendant objected and the court determined the prosecutor could ask, "Would it surprise you if [McIntosh] testified X, Y, and Z?" The prosecutor then rephrased the question, and asked, "Would it surprise you, to learn that the defendant himself told the police that he personally smoked marijuana every day?" Defendant objected again, but the court allowed the prosecutor to ask if it would surprise the witness to learn that defendant said that he smokes marijuana on a regular basis. Lindsey stated that he did not know.

The prosecutor later asked Cordero, "Would you be surprised to hear that the defendant gave a statement to the police a few days after this incident occurred, about two weeks, ten days after this incident occurred, would you be surprised if I told you that he told the police that [I.S.] slept over and that [McIntosh] slept over?" Defendant objected, and the court overruled the objection. Cordero responded by stating that he "wouldn't be surprised."

The prosecutor then pointed out that Cordero had testified McIntosh did not sleep over at defendant's home and asked, "So is the defendant a liar or are you a liar?" and then, "So it's the defendant would have [sic] a liar?" The prosecutor continued to ask the witness about defendant's statement, and then asked, "So,

24 <span>A-1144-15T3</span>

again, who is wrong here? Are you wrong or is the defendant wrong?" and then, "So, again, I ask you, who is the liar, you or the defendant?" In response, Cordero said "No one."

In our view, the prosecutor's questions requesting the witnesses' opinions about the veracity of the other witnesses' statements and defendant's statements were clearly improper. See R.K., 220 N.J. at 458; Bunch, 180 N.J. at 549; Frisby, 174 N.J. at 593-94. The court erred by overruling counsel's objections to the questions and, at the retrial, the State shall not pose such questions to any of the witnesses.

Reversed and remand for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION