# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4208-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

H.H.,

     Defendant-Appellant.

_____

     Submitted October 2, 2018 – Decided  October 24, 2018

     Before Judges Suter and Firko.

     On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-04-1062.

     Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

     Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant H.H.[1] was found guilty of third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a), and three counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), committed against M.W. when she was between the ages of thirteen and sixteen. On April 7, 2017, defendant was sentenced on count one to four years of imprisonment, on count two to a six-year term, on counts three and four to concurrent five-year terms, all to run concurrently with count one, for an aggregate six-year term. In addition, defendant was ordered to register as a sex offender under Megan's law; parole supervision for life; and a sex offender restraining order was issued pursuant to Nicole's law. Also, mandatory assessments, penalties, and a Sex Crime Victim Treatment Fund Penalty of $2,000 were imposed.

On appeal, defendant presents the following arguments:

POINT I:

THE TRIAL COURT ERRED IN ADMITTING FRESH[-]COMPLAINT TESTIMONY FROM TWO WITNESSES BECAUSE THE COMPLAINT BY M.W. WAS NOT TIMELY MADE TO THOSE WITNESSES, AND BECAUSE THE EVIDENCE ADMITTED ABOUT THE COMPLAINT WAS CUMULATIVE. (Not Raised Below)

---

[1] We use initials to protect the privacy of the victim, who is related by marriage to defendant.

POINT II:

THE COURT FAILED TO CHARGE THE JURY IN RELATION TO DEFENDANT'S STATEMENT TO POLICE AND THE REMAINDER OF THE CHARGE THAT WAS GIVEN WAS INSUFFICIENT TO ADVISE THE JURY OF THE NEED TO CRITICALLY AND EFFECTIVELY EVALUATE HIS STATEMENT IN LIGHT OF THE REALITY THAT JURORS HAVE GREAT DIFFICULTY DISTINGUISHING BETWEEN FALSE CONFESSIONS AND TRUE CONFESSIONS. U.S. CONST. AMEND VI; N.J. CONST. ART. I, PAR. 10 (Not Raised Below)

POINT III:

THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE AND MUST BE REDUCED.

A.   The Sentence Imposed.

B.   The Sentencing Court Engaged in Erroneous Double Counting When It Applied Aggravating Factor ([Two]).

C.   The Remaining Applicable Aggravating [a]nd Mitigating Factors Supported Imposition of Minimum Concurrent Sentences.

D.   The Aggravated Criminal Sexual Contact Conviction Should Be Merged [i]nto Defendant's Conviction for Endangering The Welfare of [a] Child Which Was Based [o]n [t]he Same Conduct.

3                                    A-4208-16T4

E.      The Sentencing Court Erred When It Imposed [a]
        $2,000 Sex Crime Victim Treatment Fund
        Penalty Without Considering Defendant's Ability
        [t]o Pay.

We reject these arguments and affirm defendant's conviction. However, we remand the matter to amend the judgment of conviction to merge defendant's conviction for aggravated criminal sexual contact (count one) with his conviction for endangering the welfare of a child (count two) because both were based on the same conduct.[2]

I.

The following facts are derived from the trial record. When M.W. was thirteen-years old, she was residing with her mother, defendant, who is her step-father, and younger brother in Camden. M.W. described her relationship with defendant for the two years prior as "fine" but "[not] perfect." In the Fall of 2011, after arriving home from church without his wife, defendant invited M.W. to watch television alone with him in his bedroom. He sat next to her on the floor and rubbed her back, gradually progressing down to her buttocks. She tried to move away from him but he persisted in this behavior. M.W. testified that this made her feel "uncomfortable." The next morning, she refrained from

---

[2]  Both parties agree to this amendment. The aggregate term of defendant's sentence shall remain six years with no period of mandated parole ineligibility.

telling her mother about the incident because M.W. thought her mother would not believe her. M.W. testified that, thereafter, defendant started to act more forcefully by seizing her, hugging her, and grabbing her buttocks. She was afraid to report his behavior to anyone, including her mother, brother, or biological father, from whom she was estranged, because M.W. thought no one would believe her.

M.W. specifically recalled an incident when she was fourteen-years old when defendant asked her "if [she] ever experienced an orgasm?" She responded, "no," and walked away from him.

While still fourteen, M.W. recalled being alone with defendant in his car in a supermarket parking lot while her mother was shopping. Defendant asked M.W. if she liked it when he touched "[her]" and she said "no."

On another occasion, defendant confronted and interrogated M.W. about sexually provocative text messages he surreptitiously found on her phone. He badgered her about communicating with strangers, and asked her if she ever engaged in sexual activity. Defendant alarmed M.W when he told her "that he wanted to . . . lick [her] down there[,]" leaving her in shock.

Eventually at age sixteen, M.W. decided to confide in her pastor, D.T., about the recent incident. M.W. told D.T. that she "felt uncomfortable at home.

A-4208-16T4

She wanted to leave home and she felt that some things were inappropriate." D.T. and her husband, J.T., who is also a pastor, served at Gatekeepers Fellowship Church, where M.W. was a student and attended religious services. Based upon her trust in D.T., a meeting was convened with M.W., her mother, defendant, and both pastors, to discuss the allegations.

At the meeting, defendant denied the allegations, and the attendees were given "strict instructions" by the pastors to preserve confidentiality. They did not notify authorities or take any action. M.W.'s mother did not do anything either.

Out of frustration, at age seventeen, M.W. left home and moved in with her father to escape defendant. She decided to inform an aunt ("M.S.") about her experiences with defendant and the meeting. After M.W.'s father was told about this history by M.W. and M.S., law enforcement was alerted.

Detective Timothy Houck of the Camden County Prosecutor's Office Special Victims Unit handled this case. He conducted a forensic interview of M.W., her mother, and M.S. An interview was conducted of defendant at the Prosecutor's office. He was advised of his Miranda[3] rights orally and in writing, waived them, and gave a recorded statement. In response to questioning,

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-4208-16T4

defendant admitted to massaging M.W. on "the back of her legs and the front of her legs" after she ostensibly complained of pain after exercising. He also admitted to asking her if she ever had an orgasm, but denied asking to lick her vagina. Shortly thereafter, he recanted and answered "yes" when asked if he ever told M.W. he wanted to "eat her out." He concluded that his hand slipped to her butt during a hug, and that he engaged in all of this conduct because he found her attractive, resembling her mother, and wanted "to see her [M.W.'s] reaction." He blamed himself and M.W., rationalizing that "she always approach[ed] him."

## II.

Defendant first argues that the "fresh-complaint" testimony of M.S. and D.T should have been barred because M.W.'s complaints were untimely made, she did not contend that she was fearful of defendant, or that she was embarrassed or coerced into silence. He further argues that the fresh-complaint testimony was cumulative, and "served only to make the jury believe that the State had a greater number of witnesses than the defense." We disagree.

"On appellate review, '[c]onsiderable latitude is afforded' to the court's ruling, which is reversed 'only if it constitutes an abuse of discretion.'" State v. Cole, 229 N.J. 430, 449 (2017) (citations omitted). Evidentiary determinations

A-4208-16T4

will be affirmed "absent a showing of an abuse of discretion. i.e., there has been a clear error of judgment." State v. Nantambu, 221 N.J. 390, 402 (2015) (quoting State v. Harris, 209 N.J. 431, 439 (2012)).

If no objection is raised before the trial court, we review for plain error and, "[a]ny error or omission shall be disregarded . . . unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ." See R. 2:10-2.

The fresh-complaint rule was established "to allow the State to meet in advance the negative inference which would be drawn from the absence of evidence that the [child] victim reported the [sexual abuse] to one to whom she would naturally turn for comfort and advice." State v. J.S., 222 N.J. Super. 247, 256 (App. Div. 1988) (citation omitted). Our Supreme Court has described fresh-complaint evidence as follows:

> [T]o qualify as fresh[-]complaint, the victim's statements to someone she would ordinarily turn to for support must have been made within a reasonable time after the alleged assault and must have been spontaneous and voluntary. At trial, fresh-complaint evidence serves a narrow purpose. It allows the State to negate the inference that the victim was not sexually assaulted because of her silence. Only the fact of the complaint, not the details, is admissible. In addition, the victim must be a witness in order for the State to introduce fresh-complaint evidence.

[State v. Hill, 121 N.J. 150, 163 (1990) (citations omitted); see also State v. R.K., 220 N.J. 444, 455 (2015).]

Fresh-complaints may also be admissible when "made in response to general, or non-coercive questioning[,]" with greater latitude shown in cases dealing with young children. Hill, 121 N.J. at 167. It is left to the trial court "to examine all the circumstances of the questioning to determine whether the line between coercive and benign questioning has been crossed." Id. at 170. Similarly, "the trial court in its discretion may, but need not, exclude cumulative fresh-complaint testimony that is prejudicial to defendant." Ibid.

Although fresh-complaint evidence serves a narrow purpose, and should not be considered as substantive evidence of guilt or as bolstering the credibility of the victim, R.K., 220 N.J. at 456 (citing State v. Bethune, 121 N.J. 137, 147-48 (1990)), a review of the record reveals that the judge did not indicate that M.W.'s testimony was substantive evidence of defendant's abuse. Rather, the judge properly determined, given M.W.'s young age when the abuse commenced and the inaction of the adults who participated in the church meeting, that there was justifiable cause in permitting the fresh-complaint testimony, which was succinct and limited to M.W.'s reporting of abuse only. It was not until M.W. moved out of the home she shared with defendant, her mother, and brother, that

9

she confided in M.S. about the abuse, who treated M.W. "like [her] second daughter." The record reflects that the fresh-complaint witnesses testified as to the fact of M.W's complaints in terms of reporting and not substance. An appropriate limiting instruction and jury charge at the conclusion of trial was given by the judge. We are unpersuaded by defendant's contention that the judge erred by admitting this testimony. The limiting instruction was sufficient to dispel any reasonable claim of prejudice. See State v. Vallejo, 198 N.J. 122, 129 (2009). We have no reason to believe the jurors did not follow the court's instructions. See Verdicchio v. Ricca, 179 N.J. 1, 36 (2004). Accordingly, there was no error warranting reversal.

III.

Defendant next argues that the judge improvidently utilized Model Jury Charges on "Credibility of Witnesses" and the "Redacted Recorded Statement of Defendant" for the first time on appeal. No objection or tailored jury charges were proffered to the judge by defendant. The judge instructed the jury as follows:

> As the judges of the facts, you are to determine the credibility of the witnesses and in determining whether a witness is worthy of belief and therefore credible, you may take into consideration the appearance and demeanor of the witness; the manner in which he or she may have testified; the witness' interest in the outcome

A-4208-16T4

of the trial, if any; his or her means of obtaining knowledge of the facts; the witness' power of discernment, meaning his or her judgment or understanding; his or her ability to reason, observe, recollect, and relate; the possible bias if any in favor of the side for whom the witness testified; the extent to which if at all each witness is either corroborated or contradicted, supported or discredited by other evidence; whether the witness testified with an intent to deceive you; the reasonableness or unreasonableness of the testimony the witness has given; whether the witness made any inconsistent or contradictory statement; and any and all other matters in the evidence which serve to support or discredit his or her testimony.

Through this analysis as the judges of the facts, you weigh the testimony of each witness and then determine the weight to give to it. Through that process you may accept all of it, a portion of it, or none of it.

. . . .

There is for your consideration in this case, a recorded statement allegedly made by the defendant. It is your function to determine whether or not the statement was actually made by the defendant and if made, whether the statement or any portion of it is credible. You may consider all the circumstances surrounding the statement in making that determination with the following caution. I instruct you that in this case certain portions of the recorded statement have not been provided to you. You may only consider those portions of the statement which have been admitted in evidence and must not speculate as to the contents of the omission or the reason or reasons for the omission.

11

Defendant argues that the jury charge should have included a novel instruction warning them about the alleged inherent danger of confession evidence. In his brief, he cites social science articles about false confessions and DNA evidence, and contends now on appeal that the judge should have considered and incorporated same. Defendant's argument lacks merit and we are not persuaded that the judge's use of Model Jury Charges was prejudicial or insufficient.

We note that, "'[i]t is difficult to overstate the importance of jury instructions' as '[a]ppropriate and proper charges are essential for a fair trial.'" State v. Scharf, 225 N.J. 547, 581 (2016) (citations omitted). The judge has an "independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case . . . ." State v. Reddish, 181 N.J. 553, 613 (2004). The plain error standard of Rule 2:10-2 applies to our review of the charge, and we must assure that any deficiency or defect in the charge was not apt to have been consequential. The judge properly "guide[d] the jury in the course [of] its deliberation" here. See State v. Jackmon, 305 N.J. Super. 274, 290 (App. Div. 1997). We find no error as to the jury charge and the verdict must stand.

12

IV.

Defendant's final point on appeal is that his sentence is manifestly excessive. As our Supreme Court has recently reaffirmed, "'when [trial judges] exercise discretion in accordance with the principles set forth in the Code [of Criminal Justice] and defined by [the Court] . . . , they need fear no second-guessing.'" State v. Bieniek, 200 N.J. 601, 607-08 (2010) (quoting State v. Ghertler, 114 N.J. 383, 384-85 (1989)). Once the trial court has balanced the aggravating and mitigating factors set forth in the statute, N.J.S.A. 2C:44-1(a) and -1(b), it "may impose a term within the permissible range for the offense." Id. at 608.

In arriving at the sentence, the judge found aggravating factors two, three, and nine applied. See N.J.S.A. 2C:44-1(a). Addressing factor two, the gravity and seriousness of the harm inflicted on the victim, N.J.S.A. 2C:44-1(a)(2), the judge found M.W. was particularly vulnerable and incapable of resistance due to her extreme youth. Addressing factor three, the risk of re-offense, N.J.S.A. 2C:44-1(a)(3), the judge found the familial relationship and escalation of the miscreant conduct over the years by defendant upon M.W. was justified. Under factor nine, the need for deterrence, N.J.S.A. 2C:44-1(a)(9), the judge observed that there was a strong need to deter defendant and others from violating the

law, clearly stating he was not "double counting." The judge found no mitigating factors applied in this case, and duly considered that "defendant has not - - had prior contact with the court system . . . ."[4]

On the whole, we detect no reason to disturb the trial judge's sentencing analysis, and will not "second-guess" his discretionary assessments. See Bieniek, 200 N.J. at 608. The sentence imposed, a "flat sentence" of six years, which was below the presumptive mid-range sentence for a single second-degree conviction, see N.J.S.A. 2C:44-1(d) and 1(f)(1)(c), was well supported by the record, the presentence report, and the other relevant considerations weighed by the trial judge.

We have fully considered the balance of the arguments raised by defendant, and are satisfied that those arguments lack sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(2).

Affirmed as to defendant's convictions, and remanded for sentencing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Defendant had one municipal court conviction in 2004 which had no bearing on his sentence.