# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1206-19

STATE OF NEW JERSEY,

    Plaintiff- Respondent,

v.

LUKE V. BAKULA,

    Defendant-Appellant.

_____

> Argued October 2, 2023 – Decided December 15, 2023
>
> Before Judges DeAlmeida, Berdote Byrne, and Bishop-Thompson.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 15-12-0942.
>
> Susan Lee Romeo, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Susan Lee Romeo, of counsel and on the brief).
>
> Ali Y. Ozbek, Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Ali Y. Ozbek, of counsel and on the brief).

PER CURIAM

Following a ten-day trial, a jury found defendant guilty of two counts of aggravated sexual assault, N.J.S.A. 2C:15-2(a)(1) (count one and four); two counts of sexual assault, N.J.S.A. 2C:14-2(b) (counts two and five); and two counts of endangering the welfare of a child, N.J.S.A. 2C:25-4(a)(1) (counts three and six). The offenses arose from A.S. and defendant's inappropriate relationship that developed while they were members in a dojo, also known as a karate academy.

Defendant was sentenced to twelve years under count one and six years under count two, to run consecutively and subject to an eighty-five percent parole bar under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

I.

On appeal, defendant presents the following arguments.

> POINT I
>
> DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE THIS TRIAL WAS REPLETE WITH INADMISSIBLE LAY OPINION AND HEARSAY TESTIMONY REGARDING DEFENDANT'S CHARACTER, CONDUCT[,] AND GUILT, ELICITED FROM THE STATE'S WITNESSES IN VIOLATION OF MULTIPLE COURT RULINGS.

2

1.  Inflammatory, Inadmissible Lay Opinion Testimony Regarding Defendant's Character.

2.  Inadmissible Lay Opinion Testimony [a]nd Hearsay Regarding Defendant's Conduct [a]nd Guilt.

3.  Testimony [b]y [t]he State's Witnesses Regarding Defendant's Character, Conduct [a]nd Guilt [w]as Inadmissible Lay Opinion [a]nd Hearsay That Was Highly Prejudicial.

4.  The Prejudice [f]rom This Inadmissible Opinion [a]nd Hearsay Evidence Was Overwhelming Where [t]he State's Case Rested Almost Exclusively [o]n [t]he Victim's Testimony.

POINT II

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED HIGHLY PREJUDICIAL ALLEGATIONS OF UNCHARGED CONDUCT, BECAUSE IT FAILED TO MAKE THE REQUIRED FINDINGS UNDER STATE V. COFIELD, 127 N.J. 328 (1992), APPLIED THE WRONG BURDEN OF PROOF, AND PERMITTED THE JURY TO USE THE EVIDENCE FOR PLAN, MOTIVE, OPPORTUNITY, KNOWLEDGE, BACKGROUND, AND DELAYED DISCLOSURE, NONE OF WHICH WERE PROPER BASES FOR ADMISSION.

1.  The State's Motion [t]o Admit Uncharged Conduct Evidence.

2.  The Trial Court Abused Its Discretion When It Admitted Evidence [o]f [t]he Uncharged Conduct Because It Applied [t]he Wrong Burden [o]f Proof, It Failed [t]o Identify [t]he Specific Purpose [o]r Disputed

3

Material Issue, [a]nd It Failed [t]o Conduct [t]he Required Balancing Test.

3. None [o]f The Purposes [f]or Which These Highly Prejudicial, Unsupported Allegations Were Admitted Were Permissible Under These Circumstances.

POINT III

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED, AS "FRESH COMPLAINT," EVIDENCE OF A.S.'S VAGUE ALLEGATIONS TO HER FRIEND IN 2013, SEVEN YEARS AFTER THE ABUSE ALLEGEDLY ENDED IN 2006.

1. The State's Motion [t]o Admit Evidence [o]f A.S's 2013 Statement To [M.G.]

2. The Court Abused Its Discretion When It Admitted These Vague Allegations Under [t]he Fresh Complaint Doctrine: The Seven-Year Delay Rendered [t]he Complaint Not "Fresh," [a]nd [t]he Court's Decision Was Based [o]n Its Mistaken Understanding [o]f [t]he Facts [a]nd [a] Mistaken Belief That [t]he Lengthy Delay Solely Presented [a] Credibility Issue [f]or [t]he Jury.

POINT IV

DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE THE CUMULATIVE EFFECT OF THE ERRORS DEPRIVED HIM OF DUE PROCESS AND THE RIGHT TO A FAIR TRIAL. (Not raised below).

We have considered the arguments in view of the record and applicable legal principles. We hold the evidence against defendant was of sufficient

4

weight to lead us to conclude there was no error or abuse of discretion by the trial court and reasonably viewed, did not produce an unjust result. Accordingly, we affirm defendant's conviction and sentence.

## II.

We review a trial court's evidentiary rulings "'under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion.'" State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). "Under [the] deferential standard, we review a trial court's evidentiary ruling only for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). A reviewing court will not substitute its "judgment for the trial court's unless," the trial court's determination "was so wide of the mark that a manifest denial of justice resulted." Ibid. (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

Where a defendant challenges the admission of evidence for the first time on appeal, the plain error standard applies. "Plain error is a high bar and constitutes 'error not properly preserved for appeal but of a magnitude dictating appellate consideration.'" State v. Santamaria, 236 N.J. 390, 404 (2019) (quoting State v. Bueso, 225 N.J. 193, 202 (2016)). Stated differently, we must

determine whether the alleged error was "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. To warrant a reversal under this standard, the "error [at trial]must be sufficient to raise 'reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). "To determine whether an alleged error rises to the level of plain error, it 'must be evaluated "in light of the overall strength of the State's case."'" State v. Clark, 251 N.J. 266, 287 (2022) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)).

A.    Lay Opinion and Hearsay Testimony

Defendant contends on appeal that the State elicited improper hearsay and opinion testimony from S.N., G.M., and A.S. about his character traits, conduct, and guilt that was "highly prejudicial," usurped the jury's fact-finding function, improperly bolstered the State's claim that defendant committed the sexual assaults, and clearly produced an unjust result. Thus, he argues, reversal is warranted. Defendant's contentions lack merit.

Testimony of S.N. and G.M.

Defendant argues the "extensive" lay opinion and hearsay testimony from S.N. and G.M. that defendant was "weird" and "awkward" was offered for no

reason other than to cast defendant as a "strange person - a weird, long-haired communist," "likely to prey on young girls," and to make an emotional appeal to the jury. Since there was no objection to this testimony at trial, our review is under the plain error standard. R. 2:10-2.

S.N., a former dojo member, began attending the dojo in 2004. In response to the prosecutor's question to describe "the kind of person" defendant was when they initially met, S.N. described defendant as "unusual," having an "odd personality," and that he "seemed really lost." The witness said defendant also had "a little unusual appearance," with "big, long hair." The court sustained defense counsel's objection to S.N.'s testimony that defendant was a "staunch communist."

G.M., a Methodist pastor and former dojo member, was also asked to describe defendant when they initially met. Initially, G.M. testified defendant was "kind of an awkward weird kid." When asked to describe "what kind of person" defendant was based on her interactions, G.M. restated he was a "weird kid." The judge then asked: "[W]hat does that mean?" Upon further questioning by the prosecutor, G.M. explained defendant "seemed like a nice kid" and there was "some awkward social things." Defense counsel objected to any further exploration by the prosecutor of the meaning of "weird" and

7

"awkward," and the prosecutor moved on to another line of questioning. G.M. also recalled defendant as "overweight," "withdrawn," a "little quiet," and with "kind of long hair."

Defense counsel did not object to either witnesses' description of defendant's physical appearance and personality nor did he request a limiting instruction. Both witnesses testified they did not see defendant engage in any inappropriate behavior with A.S. or any other child.

Defendant next challenges testimony from S.N. and G.M. concerning defendant's conduct and guilt. The trial court conducted a N.J.R.E. 104 hearing in accordance with State v. Covell, 157 N.J. 554, 573, 574 (1999). At the 104 hearing, S.N. testified that in 2006 or 2007, defendant told her that he was "in love" with and had a "crush" on A.S. S.N. said she felt as if she was "punched in the stomach because [she] couldn't breathe" and it was a "shocking statement." At the time, defendant was eighteen or nineteen years old and A.S. was ten; physically he was a "young man," and she was a "prepubescent girl." Later, S.N. called defendant and told him that his feelings for A.S. were "completely wrong," "totally inappropriate," and "totally out of line." She also relayed defendant's statement to her husband and G.M. S.N. left the dojo in 2009.

G.M. also testified defendant told her that he had a "crush" on A.S. She thought defendant's statement was "weird" because there was a nine-year age gap between defendant and A.S. G.M. said when she told her father, N.M., about defendant's "feelings," he reacted with a "kind of scrunched up in an unpleasant look [on his face]." Defendant objected but the court overruled defendant's objection, finding this testimony was not hearsay. G.M. also told S.N. about defendant's statement.

After hearing testimony, the court considered and discussed Covell and N.J.R.E. 803(b), and ruled the separate direct conversations defendant had with S.N. and G.M. were admissible as statements offered against a party opponent. Further, the trial court determined the witnesses were credible for the purpose of the 104 hearing. The court noted, ultimately, "the jury [was] going to make the ultimate determination as to whether or not the [witnesses] were credible."

At trial, both witnesses testified to the direct conversations they had with defendant about his feelings for A.S. Following G.M.'s testimony, the trial judge gave a limiting instruction to the jury regarding defendant's statements made to S.N. and G.M. and gave it again when he read the jury the final charges before it deliberated. Defendant denied making the statements to S.N. and G.M.

A-1206-19

"[T]estimony regarding another person's character trait is a form of lay opinion evidence." State v. C.W.H., 465 N.J. Super. 574, 601 (App. Div. 2021) (quoting Fitzgerald v. Stanley Roberts, Inc., 186 N.J. 286, 310 (2006)). Lay opinion evidence is "limited to testimony that will assist the trier of fact either by helping to explain the witness's testimony or by shedding light on the determination of a disputed factual issue." State v. McLean, 205 N.J. 438, 458 (2011). Lay opinion testimony is admissible subject to two conditions set forth in N.J.R.E 701. Lay opinion evidence "may be admitted if it: (a) is rationally based on the witness'[s] perception; and (b) will assist in understanding the witness'[s] testimony or determining a fact in issue." N.J.R.E. 701. The second element therefore precludes "lay opinion on a matter 'as to which the jury is as competent as [the witness] to form a conclusion.'" State v. Sanchez, 247 N.J. 450, 469-70 (2021) (alteration in original) (quoting McLean, 205 N.J. at 459). A witness's perception is knowledge acquired "through the use of one's sense of touch, taste, sight, smell[,] or hearing." McLean, 205 N.J. at 457. Fact testimony relates to what a witness did or saw. See id. at 460.

We conclude S.N. and G.M.'s descriptive testimony about their initial interactions with defendant was permissible lay opinion because the testimony was based on their perception of defendant's physical appearance, personality,

A-1206-19

and social skills. Moreover, the record shows defense counsel waived a curative instruction that the jury disregard any comments that defendant was "weird," "awkward," and similar remarks. The witnesses lacked personal knowledge of whether A.S. was sexually assaulted by defendant, and therefore, the descriptive testimony was not offered for the truth of the matter asserted. Thus, we are satisfied the trial court's admission of their testimony was not clearly capable of producing an unjust result.

With respect to defendant's statements to S.N. and G.M. admitting to having a "crush" on A.S., we agree with the trial judge that the witnesses' testimony did not contain hearsay because defendant was the declarant. See N.J.R.E. 803(b)(1). We likewise reject defendant's argument that the prejudice to defendant was outweighed by the probative value of the conversations. See N.J.R.E. 403. In fact, defendant denied making the statement to either witness. As noted above, defendant's statement met the requirements of N.J.R.E. 803 (b)(1) and assisted the jury in determining a disputed factual issue: whether he had a motive to sexually assault A.S. Moreover, because a jury can evaluate evidence for itself does not render testimony about that evidence categorically "unhelpful," nor does the lay witness "usurp[] the jury's role" in offering the testimony. State v. Singh, 245 N.J. 1, 20 (2021). Instead, their testimony was

admissible because the jury remained "free to discredit" the witnesses' testimony that defendant made damaging admissions to them about his interest in A.S. Ibid. We discern no reversible error.

We likewise reject defendant's contentions regarding G.M.'s testimony with respect to whether it was "ethical or moral" to remain at the dojo following a conversation G.M. had with the dojo owner's wife. No objection was made by defense counsel. On cross-examination, defense counsel questioned whether on an "ethical or moral" basis G.M. decided to talk to the dojo owner. G.M. responded, "Yes."

G.M. also stated on multiple occasions that she had "a gut instinct" regarding the truth of A.S.'s allegations, that she "believe[d] something happened" and trusted her "gut instinct" despite having not done an investigation into the truth of the allegations.

G.M.'s "gut instinct" and "ethical or moral" reasons were not based on her perception because she never witnessed any inappropriate behavior between defendant and A.S. See N.J.R.E. 602 ("[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); N.J.R.E. 701 (a non-expert witness may give testimony "in the form of opinions or inferences" as long as it "is rationally

based on the witness'[s] perception" and "will assist in understanding the witness'[s] testimony or determining a fact in issue."). G.M.'s testimony reflecting her opinion that A.S. had truthfully reported that defendant had abused her was, therefore, inadmissible. However, given the strength of the admissible evidence adduced at trial, we conclude that the admission of that testimony did not constitute plain error.

Testimony of A.S.

Lastly, defendant claims the testimony of A.S. calling defendant a "pedophile" was the "most direct example of improper opinion testimony regarding [his] guilt" because the State's case rested "almost exclusively" on her testimony. We are not convinced.

A.S. testified in 2005-2006, when she was in fourth grade, defendant continued to "penetrate her [genitals] with his fingers," "make her touch him," and "make [her] masturbate him" under his clothes. When A.S. cried, defendant shushed her and said: "[I]t's okay." According to A.S., the acts happened "pretty much every time," sometimes in the mat room, but defendant "mostly" waited for people to leave the waiting room. According to A.S., she became "really afraid of defendant." She also testified she felt "completely powerless" when the

incidents happened at the dojo because she knew the acts were going to happen "whether she wanted them to or not."

A.S. also recounted the abuse by defendant that occurred twice in her bedroom during the spring and summer of fourth grade. When A.S. was alone with defendant, he "touched [A.S.] over and then under her clothes," "penetrated her," and made her "touch him" and "[masturbate] him for over fifteen minutes." Once during dinner, the family and defendant were discussing having children, and A.S. said, "Well, I'm never going to have kids." J.S. then said she would change her mind when she was older. A.S. testified defendant said, "[W]e'll decide that for ourselves one day."

A few weeks later, defendant returned for another family dinner. The alleged abuse again took place in A.S.'s bedroom. A.S. said defendant did the "[s]ame thing he always [did]." He began "touching [her] over [her] clothes and then . . . penetrated [her] vaginally and he made [her] touch him."

A.S. testified around 2008 when she was in the sixth grade, she saw defendant at the middle school as a first-grade student teacher. She stayed away from him and told all her friends he was a "pedophile." Defense counsel did not object. Rather, on cross-examination, defense counsel questioned whether A.S. told anyone that she believed defendant was a "predator." A.S. responded that

14

she told her friends defendant was a "pedophile" but did not tell them he molested her.

Defense counsel further questioned A.S. regarding whether she conducted an internet search to see if defendant had a criminal record. A.S. testified that she found nothing on the internet about defendant as an adult. The prosecutor objected to defense counsel's line of questioning. In a side bar conference, the trial court stated it would not "normally" permit that line of questioning and answering. The court noted, however, A.S. called defendant a "pedophile" two or three times during her testimony and "no objection was made presumably for strategy purposes." The court, however, permitted further questioning of A.S. to clarify whether calling defendant a pedophile was related to the abuse perpetrated on her and not based on some other act. Neither defense counsel nor the prosecutor sought further clarification on cross or re-direct examination.

Defendant's arguments are unavailing. Defendant failed to object for strategic reasons, then invoked the term "predator" to explore the victim's belief, and now attempts to categorize the testimony as prejudicial and inadmissible hearsay. It is not. The record shows A.S.'s testimony was from her personal experience with defendant and offered for two reasons. First, to prove defendant committed the sexual assaults on A.S. as an especially young child, thereby

15

showing defendant's attraction to a prepubescent child. Second, to show how A.S. felt when she saw defendant sporadically in the building as a first-grade student teacher for children of the same age as A.S. when the abuse began. We are satisfied the reference to defendant as pedophile does not amount to plain error sufficient to raise a reasonable doubt that the jury arrived at a verdict it would not have otherwise reached.

B.    Prosecutorial Misconduct

On appeal, defendant argues the prosecutor committed three instances of prosecutorial misconduct. First, the prosecutor invoked in summation G.M.'s testimony regarding her "gut instinct" and "her belief in defendant's guilt," that together created a "moral and ethical dilemma" for G.M. to remain at the dojo. Second, the prosecutor "implicitly asked the jury to consider G.M.'s moral conclusions in its determination of defendant's guilt." Consequently, defendant argues he was deprived of a fair trial.

Defendant's contention is belied by the record. Both parties' summation referenced G.M. Defense counsel summarized her testimony, stating "G. M. did [not] do anything because she did [not] believe" A.S.'s allegations. Defense counsel also referred to G.M.'s pastoral title.

The prosecutor, however, referenced G.M. only by her first name. As to her G.M.'s testimony, the prosecutor in her summation commented on the verbal and demeanor of S.N. and G.M. regarding their conversations with defendant about his feelings about A.S. Specifically, the prosecutor commented that S.N. and G.M. exhibited a "demeanor of guilt" on the stand "because they had known and connected the dots as to what was happening back them, that this defendant [told] them I'm in love with [A.S.]" Defense counsel did not object to this summarization of witnesses' testimony.

"'Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented.'" State v. Patterson, 435 N.J. Super. 498, 508 (App. Div. 2014) (quoting State v. R.B., 183 N.J. 308, 332 (2005)). "In deciding whether prosecutorial conduct deprived a defendant of a fair trial, 'an appellate court must take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occurred.'" State v. Williams, 244 N.J. 592, 608 (2021) (quoting State v. Frost, 158 N.J. 76, 83 (1999)). "Factors to be considered in making that decision include, '(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court

ordered the remarks stricken from the record and instructed the jury to disregard them.'" Ibid. (quoting Frost, 158 N.J. at 83). "In reviewing closing arguments, we look, not to isolated remarks, but to the summation as a whole." State v. Atwater, 400 N.J. Super. 319, 335 (App. Div. 2008) (citing State v. Carter, 91 N.J. 86, 105 (1982)). Reversal is appropriate only where the prosecutor's actions are "clearly and unmistakably improper" to "deprive defendant of a fair trial." Patterson, 435 N.J. Super. at 508 (quoting State v. Wakefield, 190 N.J. 397, 437-38 (2007), cert. denied, 552 U.S. 1146 (2008)) (internal quotation marks omitted).

Measured against this standard, we are not persuaded the prosecutor's remarks made during summation deprived defendant of a fair trial. As discussed above, defense counsel made no timely objection to the comments now raised on appeal. Having reviewed the summation in its entirety, we are satisfied the prosecutor's summation failed to implicitly ask the jury to consider G.M.'s moral conclusions in their determination of defendant's guilt. Furthermore, the trial judge instructed the jury that counsels' summations were not evidence and must not be considered as evidence. After considering the totality of the circumstances, including the context of the challenged remarks, we find no merit to defendant's contention.

C.    Uncharged Conduct Evidence from 2002 to 2005

Defendant now argues the trial court erred by admitting evidence of the uncharged conduct allegedly committed by defendant from 2002 to 2005. Defendant argues: the court applied the wrong burden of proof; the court failed to identify the specific purpose or disputed material issue; and the court failed to conduct the required balancing test. We reject defendant's contentions.

After jury selection, the State moved to admit acts of sexual abuse between 2002 and 2005 as intrinsic evidence under State v. Rose, 206 N.J. 141 (2011), or alternatively, as other crimes evidence under N.J.R.E. 404(b) and State v. Cofield, 127 N.J. 338 (1992).

We discern from the record, the State argued and, ultimately, presented the following evidence of uncharged conduct by defendant with A.S. to show he groomed her to engage in the sexual acts. A.S. testified at a 104 hearing that at the time of the alleged abuse, her family were long standing members of the dojo, and her mother was a teaching assistant. A.S. and her young brother would accompany their mother when she trained at the dojo.

The abuse started when she was six or seven years old in the mat room at the dojo. She stated near the end of second grade and the beginning of third grade, defendant began "rubbing" her breasts and genitals over and then under

A-1206-19

her clothes. A.S. claimed that when she was in mid-third grade the abuse escalated to "a lot more regular" "penetration with his finger." By the end the third grade, defendant had penetrated A.S. and had her masturbate him "over twenty or thirty times."

After oral argument, the trial court determined the uncharged conduct "evidence [was not] intrinsic." Citing U.S. v. Green, 617 F.3d 233 (3rd Cir. 2010), and Rose, the court found any acts committed by defendant prior to 2005 did not directly prove the charges in the indictment. The court also found the uncharged acts were not performed "contemporaneously" with the charged acts from 2005 to 2006. It "did not find that the crimes prior to 2005 facilitate[d] the commission of the charged crime under the intrinsic evidence argument."

The court appropriately conducted a Cofield analysis and concluded the evidence related to the alleged sexual acts that predate 2005 was admissible at trial. With respect to the first prong, the court found the "prior acts were relevant to a disputed issue." As to the second prong, the court found defendant's "conduct [was] similar in kind and it [was] reasonably close in time." The judge explained "there [was] no break whatsoever" because "[i]t was a continuing course of conduct." In considering the third prong, the court also found there was clear and convincing evidence of prior acts based on the State's

representation concerning statements made by A.S. and other witnesses.  Under the fourth prong, the court acknowledged the prior acts "could be considered very prejudicial" to the defendant.  However, in considering the fourth prong, the court stated it would impose limitations on the prior acts utilizing the guidelines articulated in State v. Herbert, 457 N.J. Super. 490, 505 (App. Div. 2019), and giving a limiting instruction to the jury before the evidence was presented and in the final jury charge.

At trial, A.S. recounted the details of the sexual abuse from 2002 to 2005. Immediately following this testimony, the trial court gave a limiting instruction to the jury explaining that evidence of defendant's acts between 2002 and 2005 was offered for the following purpose:  necessary background; an ongoing pattern to facilitate the commission of the crimes from 2005 to 2006; motive to continue the sexual abuse knowing defendant would remain silent; why A.S. was helpless, remained silent, and did not confide in her mother; and an alleged plan to desensitize A.S. to sexual conduct so that he could continue his abuse.

Before a court determines whether a prior bad act is admissible for a particular purpose, it should first determine whether the evidence relates to a prior bad act or whether it is intrinsic to the charged offense.   State v. Brockington, 439 N.J. Super. 311, 325 (App. Div. 2015) (quoting Rose, 206 N.J.

at 179).  Evidence that is intrinsic to the charged offense, while needing to satisfy the rules relating to relevancy and undue prejudice, "is exempt from the strictures of <u>Rule</u> 404(b)[.]"  <u>Rose</u>, 206 N.J. at 177.  Intrinsic evidence is limited to two categories:  (1) evidence that "directly proves the charged offense"; and (2) evidence that, when "performed contemporaneously with the charged crime," facilitates "the commission of the charged crime."  <u>Brockington</u>, 439 N.J. Super. at 327-28 (quoting <u>Rose</u>, 206 N.J. at 180) (internal quotation marks omitted).  As to the second category of intrinsic evidence, the temporal proximity between the uncharged bad act and the indicted crime must be contemporaneous, not simply "close in time," and the link between the same must be "meaningful."  <u>Brockington,</u> 439 N.J. Super. at 338 (Fisher, P.J.A.D., dissenting) (citations omitted).

In <u>Cofield</u>, the Court adopted a four-part test to determine the admissibility of other bad acts and crimes evidence.  127 N.J. at 338.  To be admissible under N.J.R.E. 404(b), the evidence:  (1) must be relevant to a material issue which is genuinely disputed; (2) the other conduct must be similar in kind and must have occurred reasonably close in time to the events at issue in the criminal trial; (3) evidence of the other conduct must be clear and

convincing; and (4) its probative value must not be outweighed by prejudice to the defendant. Ibid.; accord State v. Green, 236 N.J. 71, 81-82 (2018).

The trial court's evidentiary ruling and Cofield analysis were sound. The court appropriately considered and determined the uncharged acts did not satisfy either category as intrinsic evidence. However, the evidence of uncharged acts had probative value because it provided the necessary background to show defendant's plan, the intent to groom a young child, and the progression of the sexual acts to desensitize A.S. See State v. Garrison, 228 N.J. 182, 197 (2017) (holding that the State may introduce evidence of an uncharged act of sexual assault on a child to show a defendant's "plan to further desensitize [the child] to sexual conduct so that he could continue to abuse her"); State v. J.M., 225 N.J. 146, 160 (2016). The court also properly informed the jury about the limited proper use of the uncharged conduct evidence and its limitations. Based on the record, we conclude there was no abuse of discretion by the trial court in admitting the uncharged conduct.

D.   Fresh Complaint

Before us, defendant contends the trial court abused its discretion in allowing M.G.'s testimony concerning A.S.'s molestation complaint seven years after the last act occurred. We are unpersuaded.

At a pretrial N.J.R.E. 104 hearing, M.G., A.S.'s best friend since middle school, testified that in the late spring of 2013, while at a coffee shop , A.S. was "uncharacteristic[ally] crying" as she "poured out" that she had been "molested" starting at age four or five by defendant at the dojo and ending before middle school.  M.G. assumed A.S. was ten or eleven when the abuse ended.  A.S. did not provide details.  Later, in July 2013, A.S. went to M.G.'s home after a "blowout fight" with her parents and disclosed additional details to M.G. that defendant "touched" her, repeated that she was "molested," and said the molestation ended "before middle school."  A.S. also stated while in a "yelling fit" she told her father about the abuse.

M.G. testified that A.S. did not report the abuse because, according to A.S., "her mom's reaction had been . . . dismissive" from A.S.'s "perspective as a child," and that A.S. thought no one would believe her, including her parents, the police, or the courts.  M.G. stated A.S. felt "bad," a "sense of shame," and "embarrassment."

The trial court granted the State's motion to admit M.G.'s testimony regarding the spring 2013 conversation with A.S. subject to the "fresh complaint limitations."  The court did not find the July conversation to be a fresh complaint because it was a separate conversation.

In a detailed and comprehensive oral ruling admitting A.S.'s initial conversation with M.G., the trial court cited State v. Hill, 121 N.J. 150, 163 (1990), and found that A.S. would ordinarily turn to M.G. for support. The court also cited State v. Hummel, 132 N.J. Super. 412 (App. Div. 1975), State v. L.P., 352 N.J. Super. 369 (App. Div. 2002), and State v. Bethune, 232 N.J. Super. 532, 536-37 (App. Div. 1989), and determined: (1) three years had been held reasonable; (2) the rules are relaxed for child sexual abuse victims; and (3) the reasonableness of the delay is left to the jury. Lastly, the court cited to State v. Pillar, 359 N.J. Super. 249, 281-82 (App. Div. 2003), stating: "even a substantial lapse of time between the assault and the complaint may be permissible if satisfactorily explainable by the age of the victim and the circumstances surrounding the making of the complaint." The trial court calculated five years between the end of the alleged abuse and the disclosure to M.G., and seven years until the complaint to police. The court concluded "[t]he circumstances ma[d]e . . . clear that A.S. appeared to be fearful, embarrassed, [and,] afraid[;] that her relationship with her [m]other was rocky[; and] that even when A.S. did disclose the abuse, she was concerned about whether or not they would believe her." The court then said "the time period between the alleged abuse and its ultimate disclosure does not bar the fresh complaint witness from

testifying.  It merely becomes a credibility determination for the jury to make at trial."

Lastly. the trial court cited State v. J.S., 222 N.J. Super. 247, 253 (App. Div. 1998), and concluded "there [was] no evidence that anybody coaxed, coerced, [or] prompted A.S. to disclose or fabricate these allegations when she made them to M.G."  Thus, the court concluded the initial conversation at the coffee shop to be a fresh complaint, but not the second, separate conversation in July 2013.  Instead, the court stated that, under the case law, "a significant time delay merely bears upon the weight of the evidence and not its admissibility," and "[t]his particular length of time can be submitted to a jury for their evaluation."

In this case, the State presented additional testimony other than M.G.'s fresh complaint testimony to explain the delay in reporting the molestation.  A.S. testified that in 2013, she had a fight with her mother, which escalated into fighting about "[defendant] and karate."  A.S. told her mother she "didn't protect [her] . . . [and] never listened," and then she called her father to pick her up.  In 2013, A.S. also told her father of the abuse.  She did not provide details but "gestured" with her hands to show where defendant had touched her.  She stated at the time, she felt "ashamed," "dirty," and "embarrassed."  Sometime later,

A.S. told her mother. According to A.S., her parents did not want her to go the police because she would "ruin her future" and "nobody believes you when you go to the police." A.S. admitted that she did not want to go to the police because she "just want[ed] it to go away."

A.S. testified the first friend that she told was M.G.; however, she did not provide details but merely stated that she was "molested." A.S. reported the molestation to the police during her senior year. When asked why the delay in reporting the molestation, A.S. explained she tried "to say something in every way that she could" but that "no one would listen;" "then it was over and [she] just wanted to move on with her life." She further explained that "if he had never decided to be a teacher, she would never have gone to the police." A.S. explained that she did not want her other friends to know about the abuse. When she learned defendant became a first-grade teacher, she "knew it was going to happen again." She further explained that "if it happened again and she hadn't done anything about it, . . . then it would have been [her] fault."

Generally, hearsay is an out-of-court statement admitted "to prove the truth of the matter asserted," N.J.R.E. 801(c) and, subject to limited exceptions, is inadmissible. N.J.R.E. 802. Ordinarily, a third party's testimony about a victim's out-of-court description of an alleged sexual assault is inadmissible

A-1206-19

hearsay evidence. Ibid. However, under the fresh complaint rule, the State can present "evidence of a victim's complaint of sexual abuse, [which is] otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is fabricated." State v. R.K., 220 N.J. 444, 455 (2015). Still, "the trial court is required to charge the jury that fresh[]complaint testimony is not to be considered as substantive evidence of guilt, or as bolstering the credibility of the victim; it may only be considered for the limited purpose of confirming that a complaint was made." Id. at 456 (citing State v. Bethune, 121 N.J. 137, 147-48 (1990)).

"In order to qualify as fresh[]complaint evidence, the victim's statement must have been made spontaneously and voluntarily, within a reasonable time after the alleged assault, to a person the victim would ordinarily turn to for support." Id. at 455 (citing State v. W.B., 205 N.J. 588, 616 (2011)). In determining whether a complaint was made within a reasonable time after the act(s) occurred, the lapse of time between the incident(s) and the reporting does not bar the statement if explainable by the youth of the victim and the statement's attendant circumstances, such as "being cajoled and coerced into remaining silent by their abusers." Bethune, 121 N.J. at 143. In other words, the reasonable time component of the fresh complaint rule must be applied flexibly

"'in light of the reluctance of children to report a sexual assault and their limited understanding of what was done to them.'" W.B., 205 N.J. at 618 (quoting State v. P.H., 178 N.J. 378, 393 (2004)). An abuse of discretion may be found if the trial court made a "clear error of judgment." State v. Brown, 170 N.J. 138, 147 (2001) (citation omitted).

We reject defendant's assertion that he was deprived of a fair trial and conclude the trial court appropriately applied its discretion in admitting M.G.'s testimony concerning the coffee shop conversation, disclosing defendant's abuse, and therefore, did not deprive defendant of a right to a fair trial. P.H., 178 N.J. at 393; Bethune, 121 N.J. at 146. Here, the trial court limited M.G.'s testimony to "[o]nly the facts that [were] minimally necessary to identify the subject matter of the complaint." R.K., 220 N.J. at 456; see Hill, 121 N.J. at 163.

M.G.'s testimony satisfies the fresh complaint rule. We agree with the trial court that A.S. made a spontaneous statement when she "poured out" her complaint to her best friend M.G. while discussing "philosophical concepts."

We also disagree with defendant that A.S. did not make the complaint within a reasonable time after the last assault. We also agree with the trial court that A.S. was "exceptionally young" both when the abuse began and ended four

29

years later. The record shows various triggers since the last sexual act that steered A.S. toward revealing the molestation. First, defendant's presence at her middle school as a student teacher triggered emotions for A.S., and the feeling that the abuse could happen to another first grader. Second, the "dismissive" response from her mother. Third, her parents dissuading A.S. from reporting the abuse. Fourth, the court's findings that A.S. appeared to be "fearful," "embarrassed," and "afraid that she would not be believed by her parents, the police, or her best friend." Under these circumstances, we conclude A.S.'s complaint to M.G. was timely made. Pillar, 359 N.J. Super. at 281-82. For the reasons stated, we are satisfied the trial court had sound reasons to apply the fresh complaint doctrine, finding the initial conversation between A.S. and M.G. admissible.

Cumulative Errors

Defendant argues the cumulative effect of the previously discussed misconduct and trial errors deprived him of due process and a fair trial. As noted above, there is no error, individually or cumulatively, in any of the points asserted in this appeal and the granting of a new trial is not warranted. State v. T.J.M., 220 N.J. 220, 238 (2015); see State v. Weaver, 219 N.J. 131, 155 (2014).

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1206-19